---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**2013-1539**

**FEDMET RESOURCES CORPORATION,**

*Plaintiff-Appellant,*

v.

**UNITED STATES,**

*Defendant-Appellee,*
**and**

**ANH REFRACTORIES COMPANY,**

*Defendant-Appellee,*
**and**

**RESCO PRODUCTS, INC. and
MAGNESITA REFRACTORIES COMPANY,**

*Defendants-Appellees.*

---

**Appeal from the United States Court of International Trade
in case no. 12-CV-0215, Senior Judge Nicholas Tsoucalas.**

---

**BRIEF OF PLAINTIFF-APPELLANT FEDMET RESOURCES
CORPORATION**

---

Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins

**MORRIS MANNING & MARTIN LLP**
1401 I Street, NW
Washington, D.C. 20005
202-408-5153

*Counsel for Fedmet Resources Corporation*

September 30, 2013

**Form 9**

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Fedmet Resources Corporation    v. United States

No. 13-1539

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellant Fedmet Resources Corporation certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Fedmet Resources Corporation

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Fedmet Resources Corporation

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.  ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Morris, Manning & Martin, LLP: Julie C. Mendoza, Donald B. Cameron, R. Will Planert, Brady W. Mills, Mary S. Hodgins, Jeffrey Frank, and Kelsey M. Rule; Troutman Sanders LLP: Julie C. Mendoza, Donald B. Cameron, R. Will Planert, Brady W. Mills, and Mary S. Hodgins

9/30/2013

Date

/s/ Julie C. Mendoza

Signature of counsel

Julie C. Mendoza

Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**2013-1539**

**FEDMET RESOURCES CORPORATION,**

**Plaintiff-Appellant,**

**v.**

**UNITED STATES,**

**Defendant-Appellee,**
**and**

**ANH REFRACTORIES COMPANY,**

**Defendant-Appellee,**
**and**

**RESCO PRODUCTS, INC. and**
**MAGNESITA REFRACTORIES COMPANY,**

**Defendants-Appellees.**

**Appeal from the United States Court of International Trade**
**in case no. 12-CV-0215, Senior Judge Nicholas Tsoucalas.**

**BRIEF OF PLAINTIFF-APPELLANT FEDMET RESOURCES**
**CORPORATION**

Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins

**MORRIS MANNING & MARTIN LLP**
1401 I Street, NW
Washington, D.C. 20005
202-408-5153

*Counsel for Fedmet Resources
Corporation*

September 30, 2013

# **TABLE OF CONTENTS**

I.      STATEMENT OF RELATED CASES ..........................................................1

II.     JURISDICTIONAL STATEMENT ...............................................................1

III.    STATEMENT OF THE ISSUES ...................................................................2

IV.     STATEMENT OF THE CASE .......................................................................2

V.      STATEMENT OF FACTS ..............................................................................3

VI.     SUMMARY OF ARGUMENT .....................................................................11

VII.    ARGUMENT.................................................................................................15

        A.      Standard Of Review ...................................................................15

        B.      MAC Bricks Were Determined To Be Outside The Scope Of
                The Orders During The Original Commerce And ITC
                Investigations...............................................................................16

                1.      The Petition Excluded MAC Bricks ........................................18

                2.      Commerce Confirmed During The Pre-Initiation Review
                        Of The Petition That The Scope Language Proposed In
                        The Petition Was Intended To Exclude MAC Bricks .............21

                3.      Fedmet's Bastion® Bricks Are MAC Bricks, Not MCBs.......31

        C.      MAC Bricks Were Excluded From The ITC's Injury
                Determination And Thus May Not Lawfully Be Subject To
                Antidumping or Countervailing Duties Under The Orders ...............36

        D.      Commerce's Analysis Of The Factors Enumerated In 19 C.F.R.
                § 351.225(k)(2) Is Unsupported By Substantial Evidence ................42

                1.      The Physical Characteristics of The Product...........................43

                2.      Channels of Trade and Price and Manner of Sale and
                        Advertising....................................................................................49

                3.      Expectations of the Ultimate Purchaser and Ultimate Use
                        of the Product ................................................................................50

VIII.   CONCLUSION AND RELIEF REQUESTED............................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcelormittal Stainless Belgium v. United States,*
    694 F.3d 82 (Fed. Cir. 2012) .......................................................17, 30

*Duferco Steel, Inc. v. United States,*
    296 F. 3d 1087 (Fed. Cir. 2002) ...........................................11, 16, 43

*Eckstrom Indus., Inc. v. United States,*
    254 F.3d 1068 (Fed. Cir. 2001) ...................................................29, 39

*Fedmet Resources Corp. v. United States,*
    911 F. Supp.2d 1348 (Ct. Int'l Trade 2013) ......................1, 25, 27, 41

*Global Commodity Grp. LLC v. United States,*
    709 F.3d 1134 (Fed. Cir. 2013) ...........................................................15

*Mid Continent Nail Corp. v. United States,*
    2013 WL 3746081 (C.A. Fed) ....................................................16, 24

*Novosteel, SA v. United States,*
    284 F.3d 1261 (Fed. Cir. 2002) ...........................................11, 15, 16

*Sango International, L.P. v. United States,*
    484 F.3d 1371 (Fed. Cir. 2007) .........................................................43

*Walgreen Co. of Deerfield, Il. v. United States,*
    620 F.3d 1350 (Fed. Cir. 2010) ...................................................15, 23

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998) .........................................................39

**Statutes**

19 U.S.C. § 1671(2012) .........................................................................3

19 U.S.C. § 1673(2012) ..................................................................3,24, 38

19 U.S.C. § 1677(4)(A)(2012).............................................................37

19 U.S.C. § 1677j(2012) ...................................................................................39

28 U.S.C. § 1295(a)(5)(2012) .............................................................................1

28 U.S.C. § 1581(c)(2012) ..................................................................................1

## Regulations

19 C.F.R. § 351.225(k) ......................................................................................30

19 C.F.R. § 351.225(k)(1) ........................................................................*passim*

19 C.F.R. § 351.225(k)(2) ........................................................................*passim*

## Other Authorities

*Certain Magnesia Carbon Bricks from China and Mexico*,
    USITC Pub. 4100, Inv. Nos. 701-TA-468 and 731-TA-1166-1167 (Preliminary)
    (September 2009) ..............................................................................................41

*Certain Magnesia Carbon Bricks from China and Mexico*,
    USITC Pub. 4182, Inv. Nos. 701-TA-468 and 731-TA-1166-1167 (Final)
    (September 2010) .....................................................................................*passim*

*Certain Magnesia Carbon Bricks from Mexico and the People's Republic of China:
    Antidumping Duty Orders*, 75 Fed. Reg. 57,257 (Sep. 20, 2010) ...........9, 17, 42

*Certain Magnesia Carbon Bricks from the People's Republic of China:
    Countervailing Duty Order*, 75 Fed. Reg. 57,442 (Sep. 21, 2010) ...............9, 17

## I.     STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Plaintiff-Appellant is not aware of any other appeal in or from the same civil action or proceeding in the lower court that was previously before this or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(b), Plaintiff-Appellant is aware of the following cases pending for U.S. Court of International Trade ("CIT") that will be directly affected by this Court's decision in this case:  (i) *Fengchi Imp. And Exp. Co. v. United States*, Ct. No. 13-00166 and (ii) *Fengchi Imp. And Exp. Co. v. United States*, Ct. No. 13-00186.

## II.     JURISDICTIONAL STATEMENT

Plaintiff-Appellant Fedmet Resources Corporation ("Fedmet) appeals from the final judgment of CIT denying its motion for judgment upon the agency record. *Fedmet Resources Corp. v. United States*, 911 F. Supp.2d 1348 (Ct. Int'l Trade 2013), joint appendix ("JA") 1-10.  The CIT's jurisdiction over the appeal was pursuant to 28 U.S.C. § 1581(c)(2012).

This Court has jurisdiction to review the CIT's decision pursuant to 28 U.S.C. § 1295(a)(5)(2012).

The CIT's Judgment was entered on May 30, 2013.  Fedmet timely filed its appeal on July 29, 2013, which is within 60 days of entry of judgment as required by Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure.

## III.    STATEMENT OF THE ISSUES

1.    Whether the U.S. Department of Commerce ("Commerce") may lawfully include within the scope of antidumping and countervailing duty orders merchandise that is not described in the Orders themselves and was expressly classified as non-subject merchandise in the petition and during the original agency investigations?

2.    Whether Commerce may lawfully impose antidumping duties on merchandise that the U.S. International Trade Commission ("ITC") did not include in its affirmative injury determination?

3.    Whether Commerce's analysis of the factors set forth in 19 C.F.R. § 351.225(k)(2) is supported by substantial evidence?

## IV.    STATEMENT OF THE CASE

Fedmet appeals the decision of the CIT affirming Commerce's final scope determination with respect to the antidumping and countervailing duty orders on certain magnesia carbon bricks ("MCBs") from China ("the Orders").  In that scope determination, Commerce found that certain magnesia alumina carbon bricks ("MAC bricks" or "MACBs") imported from China by Fedmet are within the scope of the orders.  Memorandum From Barbara E. Tillman, Director, AD/CVD Operations, Office 6 to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Programs, *Certain Magnesia Carbon*

2

*Bricks from the People's Republic of China and Mexico: Final Scope Ruling –*

*Fedmet Resources Corporation*, Case Nos. A-201-837, A-570-954 and C-570-955

(July 2, 2012) ("*Final Scope Determination*"), JA476-488.

MCBs and MAC bricks are two types (among many) of refractory bricks
that are used to line furnaces and steel ladles in steel making. MAC bricks are a
distinct type of refractory brick from MCBs that contain added alumina in addition
to magnesia and carbon. The Orders by their terms cover MCBs that meet certain
specifications for magnesia and carbon content. The Orders do not reference MAC
bricks or other types of refractory bricks other than MCBs. Fedmet requested a
scope ruling confirming that MAC bricks were not covered by the Orders on the
grounds that the Orders were limited to MCBs and that the Petition and the record
of the original investigations indicated that MAC bricks were not intended to be
included in the scope of the Orders. Fedmet Resources Corporation Request for
Scope Ruling (May 3, 2011) ("Fedmet Scope Ruling Request"), JA19-90. In the
*Final Scope Determination*, however, Commerce found that Fedmet's MAC bricks
were within the scope of the MCBs orders. The CIT affirmed, and this appeal
followed.

## V.    <u>STATEMENT OF FACTS</u>

On July 29, 2009, Resco Products, Inc. ("Resco") filed a petition pursuant to
19 U.S.C. §§ 1671 and 1673 (2012) requesting antidumping and countervailing

duty investigations on MCBs from China. MCBs are one specific type of heat-resistant refractory brick used in the construction of linings of steel ladles and basic oxygen and electric arc steel furnaces. There are many other types of refractory bricks used in steel making and related applications, including MAC bricks, magnesite bricks, fired bauxite bricks, magnesia dolomite bricks, magnesia chrome bricks, and others. JA498. From the earliest stages of the investigation, however, Resco made clear that its petition was directed only at MCBs, and Resco consistently characterized these other types of bricks, including MAC bricks, as distinct products that were not intended to be covered by the Petition. The Petition defined the scope of the subject merchandise as follows:

> Imports covered by this petition consist of certain chemically bonded (resin or pitch), magnesia carbon bricks ("MCB") whose magnesia component contains at least 70 percent magnesia ("MgO"), regardless of the source of raw materials for the MgO, with carbon levels ranging from trace amounts to 30 percent, regardless of enhancements, regardless of whether or not anti-oxidants are present. The scope of this investigation excludes alumina-carbon bricks, alumina-silicon carbide-carbon bricks and all dolomite class bricks. Certain MCB that are the subject of this order are currently classifiable under subheadings 6902.10.10.00, 6902.10.50.00, 6815.91.00.00 and 6815.99. While HTSUS subheadings are provided for convenience and customs purposes, the written description is dispositive.

Memorandum on Relevant Information on the Petition, Ex. 1 (Petition) at 4-5, JA492-493 (footnotes omitted).

As noted, MAC bricks are another type of refractory brick distinct from MCBs. Unlike MCBs, MAC bricks contain significant amounts of alumina, which are added to the brick in the form of bauxite and/or corundum, during the production process. Fedmet Scope Ruling Request, JA24-25. When the MAC bricks are heated to steel-making temperatures, the alumina reacts with the magnesia to form a mineral called "spinel." The spinel improves the performance of the brick in certain applications by promoting permanent expansion in the brick when it is heated, which hinders the formation of cracks, and maintains that expansion when the ladle cools between uses. *Id.*, JA25. The spinel formation also decreases chemical attack on the brick from certain types of slags by closing pores in the brick matrix to reduce the penetration of the lining by slag and metal. *Id.* MAC bricks, like MCBs, are used in the construction of linings for steel ladles, but are used in different portions of the ladle lining from MCBs. JA74-91, JA237. Unlike MCBs, MAC bricks are not normally used in steel furnaces. JA 237.

Although the proposed scope language did not mention MAC bricks, MAC bricks and other non-MCB refractory bricks were discussed in the Petition:

> There are *several types of standard refractory bricks in addition to magnesia carbon, the subject of this petition*. Among the most important are fired magnesite, fired bauxite, magnesia dolomite and *magnesia aluminum [sic] carbon brick*. Each of these bricks possess certain unique properties, which make their use highly preferred, and even required, for certain uses in the lining of steel, ceramic, and other furnaces and holding vessels. The different types of bricks are not

generally substitutable in a technical sense, due to varying chemical and physical properties and wear characteristics.

JA498 (emphasis added).[1]

Six days after the Petition was filed, as part of its pre-initiation review,

Commerce issued a written request for clarification to Resco. Commerce noted

Resco's intent not to cover MAC bricks and requested that Resco confirm how the

scope language proposed in the Petition operated to exclude MAC bricks, and, if

necessary, revise the scope language it was proposing to ensure that MAC bricks

were excluded:

> 6.      On page 10 of the petitions you state "{t}here are several types of standard refractory bricks in addition to MCB, the subject of this petition. Among the most important are fired magnesite, fired bauxite, magnesia dolomite, and magnesia aluminum [sic] carbon brick." How does your proposed scope exclude these types of refractory bricks?

> 7.      If necessary based on the response to the questions above, please provide a revised version of the scope of the investigations as it should appear in the <u>Federal Register</u>.

JA505-506.

Resco responded to Commerce's request by submitting a response

confirming that the Petition covered only MCBs and not fired magnesite bricks,

fired bauxite bricks, magnesia dolomite bricks, or MAC bricks, and averred that no

---

[1] The use of the term "aluminum" is a typographical error and should be read as "alumina." Fedmet Scope Questionnaire Response at 9-10, JA242-243.

revisions to the scope language that it had proposed in the Petition were necessary

to accomplish this intended scope:

> The scope of our petition focuses only on MCB.  *These other products do not provide the same performance where MCB are used in steelmaking and steel handling applications.*  Their use or substitution results in significantly lower performance, higher costs and can be disruptive to the steel maker's operation.  No other system over the last 35 years helped steel makers achieve performance levels in furnaces and ladles like MCB, which are used in the most critical and high wear areas of the furnaces and ladles. …*Petitioner does not believe it is necessary to revise the scope based on the responses to the questions above.*

JA506 (emphasis added).

Nine days later, counsel for Resco testified at the staff conference in

connection with the preliminary injury investigation of the U.S. International Trade

Commission ("ITC").  Counsel for Resco again emphasized that MAC bricks were

distinct from MCBs and were not covered by the Petition:

> other refractory products, such as fired magnesite, fired bauxite, magnesia dolomite, *and magnesia alumina graphite bricks*, and the subject merchandise do not have the same physical characteristics and uses are not perceived by producers and purchasers as substitutable and are easily differentiated by price.

JA396.[2]

In its final determination, the ITC excluded MAC bricks from its affirmative

determination, concluding that they were not part of the same like product as

---

[2] "Magnesia alumina graphite brick" is another name for MAC bricks.  Fedmet Scope Ruling Request, JA23, 31.

subject MCBs.  *Certain Magnesia Carbon Bricks from China and Mexico*, USITC

Pub. 4182, Inv. Nos. 701-TA-468 and 731-TA-1166-1167 (Final) (September

2010) (hereinafter "*ITC Final Determination*") at 6-7, I-8.  The Commission noted

the existence of other types of refractory bricks, but specifically citing the

testimony provided by Resco's counsel at the preliminary staff conference, the

Commission found that MAC bricks and other non-MCB refractory bricks were

not properly regarded as within the same like product:

> MCBs are considered to be the most durable refractory brick on the
> market for furnaces and ladle linings, especially around the slag line.
> While other refractory bricks, such as fired magnesite, fired bauxite,
> magnesia dolomite, and *magnesia alumina graphite bricks*, may be
> used in place of MCBs, these alternatives do not have the same
> physical characteristics of MCBs, are easily differentiated by price,
> and their uses are not perceived by the steel producers as substitutable.

*Id.* at I-8 and n.13 (citing testimony of Resco's counsel in the preliminary staff

conference) (emphasis added). The ITC reached this conclusion despite

acknowledging that some other types of refractory bricks "are competitive with

MCBs in some applications."  *Id.* at 6.

On September 20, 2010 and September 21, 2010, Commerce published the

Orders.  The scope of the Orders was substantially unchanged from the scope

proposed by Resco in the Petition:

> The scope of these orders includes certain chemically-bonded (resin
> or pitch), magnesia carbon bricks with a magnesia component of at
> least 70 percent magnesia ("MgO") by weight, regardless of the source
> of raw materials for the MgO, with carbon levels ranging from trace

amounts to 30 percent by weight, regardless of enhancements (for example, magnesia carbon bricks can be enhanced with coating, grinding, tar impregnation or coking, high temperature heat treatments, anti-slip treatments or metal casing) and regardless of whether or not antioxidants are present (for example, antioxidants can be added to the mix from trace amounts to 15 percent by weight as various metals, metal alloys, and metal carbides). Certain magnesia carbon bricks that are the subject of these orders are currently classifiable under subheadings 6902.10.1000, 6902.10.5000, 6815.91.0000, 6815.99.2000 and 6815.99.4000 of the Harmonized Tariff Schedule of the United States ("HTSUS"). While HTSUS subheadings are provided for convenience and customs purposes, the written description is dispositive.

75 Fed. Reg. at 57,257; *see also* 75 Fed. Reg. at 57,443.

On May 3, 2011, Fedmet requested a scope ruling that certain MAC bricks imported by Fedmet from China were outside the scope of the MCB Orders.  The products imported by Fedmet that were covered by the scope ruling request were MAC Bricks marketed by Fedmet under the Bastion® product line.  Fedmet had been importing these products well before the filing of the MCBs cases. JA26; JA334.  Fedmet's Bastion® MAC Bricks contain approximately 8 to 15 percent aluminum oxide (chemical formula $Al_2O_3$) more commonly known as alumina, 3 to 15 percent carbon, 75 to 90 percent magnesia, as well as small amounts of silicon dioxide, calcium oxide, iron oxide and titanium dioxide.  JA20.

Commerce initiated a scope inquiry based on Fedmet's scope ruling request on September 26, 2011.  JA145-147.  After several sets of comments by the parties, Commerce subsequently issued a scope inquiry questionnaire to the parties

and received responses from Fedmet, Resco and the U.S. Producer ANH

Refractories Company ("ANH") on November 18, 2011.  Parties submitted

rebuttal comments on the scope questionnaire responses on December 5, 2011.

On March 30, 2012, Commerce issued its preliminary scope determination.

JA 342-383 (hereinafter "*Preliminary Scope Determination*").  Regarding the

scope language in the Orders themselves, Commerce found that Fedmet's MAC

bricks "appear[ed]" to fall within the scope of the Orders based magnesia and

carbon content levels.  JA367-368.  Commerce found, however, that it was

necessary to look beyond the Orders themselves because the scope language was

ambiguous as to whether the magnesia and carbon content levels defined in the

scope description for MCBs were intended to also apply to MAC bricks (which

Commerce erroneously described as "MCBs with alumina").  JA367.  Commerce

therefore examined the sources specified in 19 C.F.R. § 351.225(k)(1).  Commerce

found that the description of the merchandise contained in the Petition, the initial

investigation and the determinations by Commerce and the ITC all did not indicate

dispositively whether Fedmet's MAC bricks were included in the scope of the

Orders.  JA367-368.  Therefore, Commerce found it was necessary to examine

whether the bricks in question were included in the scope of the Orders under 19

C.F.R. § 351.225(k)(2).  Commerce preliminarily determined, based on an analysis

of the criteria enumerated in 19 C.F.R. § 351.225(k)(2), that Fedmet's Bastion®

MAC bricks were within the scope of the Orders on MCBs from China.  JA369-373.

On July 2, 2012, Commerce issued its *Final Scope Determination*, in which it applied the same analysis and continued to find that Plaintiff's Bastion® MAC bricks are within the scope of the Orders.  JA 476-488.

## VI.    <u>SUMMARY OF ARGUMENT</u>

1.    The scope language in the Orders refers only to MCBs and the magnesia and carbon specifications therein define *which* MCBs are covered.  The scope language does not mention MAC bricks, or any of the other myriad types of refractory bricks, at all.  However, because MAC bricks are also refractory bricks containing magnesia and carbon, Commerce concluded that there was "language in the order that is subject to interpretation."  *Duferco Steel, Inc. v. United States*, 296 F. 3d 1087, 1097 (Fed. Cir. 2002).  Accordingly, and because scope orders necessarily "must be written in general terms," *Novosteel, SA v. United States*, 284 F.3d 1261, 1269-70 (Fed. Cir. 2002), Commerce therefore appropriately consulted "the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission."  19 C.F.R. § 351.225(k)(1).

Commerce erred, however, in finding that these sources did not conclusively confirm that MAC bricks were outside the scope of Orders.  To the contrary, when

the scope language in the Orders is interpreted in light of these sources, it is evident that Commerce considered and resolved the precise question presented by the scope ruling – whether MAC bricks were encompassed within the descriptions and definitions provided in the scope description for MAC bricks. At the earliest stage in the investigation, Petitioner Resco confirmed without qualification that MAC bricks were not MCBs and were not intended to be covered by the scope language defining MCBs.

Only days after the Petition was filed, Commerce asked Resco to clarify how the scope language it was proposing operated to exclude MAC bricks. JA505. Resco responded to that question not by referencing the magnesia or carbon specifications provided in the scope language. Rather, relying exclusively upon the industry terminology, Resco simply confirmed that MAC bricks are not MCBs, but a different product entirely, and that no changes to the scope language were required. JA506. Commerce accepted Resco's proposed scope language without alteration and did not pursue the matter further. And only a few days later, counsel for Resco testified before the ITC – again relying exclusively on industry terminology – that MAC bricks were a different product from MCBs. JA396.

In the *Final Scope Determination*, however, Commerce found the express statements by Resco excluding MAC bricks in the Petition, the Commerce investigation, and the ITC investigation, as well as the ITC's determination that

MAC bricks were a different like product, were all "ambiguous" because they described MAC bricks "by name only" and did not define the characteristics that distinguish MAC bricks from subject MCBs. JA480. This conclusion ignores the fact that Commerce had recognized at the outset of the investigation that Resco intended to exclude MAC bricks and that it was *Commerce* that ultimately chose to accept Resco's assurance that MAC bricks and MCBs were sufficiently distinct products that no additional clarification to the scope language was necessary. Commerce cannot accept a petitioner's representation that its recommended scope language excludes a particular product from the scope and then, after the Orders are published, find that same language is ambiguous as to whether the Orders exclude that product. Fedmet confirmed during the scope proceeding that the terms "MCB" and "MAC brick" were terms of art in the refractories industry and that Fedmet's Bastion® MAC bricks were MAC bricks as that term was understood in the industry. *See* discussion *infra* at B.3. Given the clear expressions during the original investigation that MAC bricks were not considered to be in-scope MCBs, that should have been the end of the inquiry.

2.    The ITC's final affirmative injury determination expressly stated that it was limited to MCBs and that MAC bricks were a different "like product." *ITC Final Determination* at 6. This means that the Commission did not examine the volumes, prices, and impact of imported MAC bricks and that the Commission did

not include domestic producers and production of MAC bricks within the domestic industry that it found to have been injured. Commerce's contrary finding in the *Final Scope Determination*, affirmed by the CIT, that the ITC nevertheless did gather data on imported MAC bricks during its injury investigation is to no avail. That finding is factually wrong and, more importantly, is in direct conflict with the ITC's express determination. As a matter of law, antidumping and countervailing duties cannot be imposed on an imported product that is not the subject of an affirmative injury determination by the ITC. On this basis alone the *Final Scope Determination* is unlawful.

3. Finally, even if the Court were to find that Commerce was lawfully permitted to consider the factors in 19 C.F.R. § 351.225(k)(2), Commerce's findings under those factors are unsupported by substantial evidence. Commerce's central finding that Fedmet's MAC bricks have the same general physical characteristics as MCBs is directly contradicted by the record. This conclusion ignores Resco's own statements and testimony during the original investigations and the findings of the ITC that MAC bricks do not possess the same physical characteristics or performance properties as MCBs. It also ignores or misinterprets the information provided during the scope inquiry, which demonstrates that the alumina added to MAC bricks provides distinct performance properties not found

in MCBs, and renders them suitable for use in different sections of steel ladles from MCBs.

## VII. ARGUMENT

### A. Standard Of Review

This Court reviews antidumping determinations made by Commerce using the same standard of review used by the CIT. *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013); *Walgreen Co. of Deerfield, Il. v. United States*, 620 F.3d 1350, 1354 (Fed. Cir. 2010). Thus, this Court reviews Commerce's determination to see if it is supported by substantial evidence and is otherwise in accordance with law. *Id.*

When making scope determinations, " 'Commerce ... enjoys substantial freedom to interpret and clarify its antidumping orders. But while it may interpret those orders, it may not change them.' " *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002) (*quoting Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995)). The Court therefore gives "significant deference to Commerce's interpretation of a scope order," so long as Commerce's interpretation is not "contrary to the order's terms" and does not "change the scope of the order." *Global Commodity Grp.*, 709 F.3d at 1138. "In particular, 'orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be

reasonably interpreted to include it.'" *Mid Continent Nail Corp. v. United States*,

2013 WL 3746081 *3 (C.A. Fed) (*quoting Duferco Steel, Inc. v. United States*, 296

F.3d 1087, 1089 (Fed. Cir. 2002). "However, Commerce cannot 'interpret' an

antidumping order so as to change the scope of that order, nor can Commerce

interpret an order in a manner contrary to its terms." *Duferco Steel*, 296 F. 3d at

1095 (*quoting Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed.

Cir. 2001)).

### B.    MAC Bricks Were Determined To Be Outside The Scope Of The Orders During The Original Commerce And ITC Investigations

When determining whether particular merchandise is subject to

antidumping or countervailing duty orders, Commerce's analysis begins with the

scope of the orders as stated therein.  "A predicate for the interpretive process is

language in the order that is subject to interpretation." *Duferco Steel* 296 F. 3d at

1097.  However, because antidumping and countervailing duty orders are

necessarily written in general terms, *Novosteel*, 284, F.3d at 1269-70, when the

scope language alone does not unambiguously resolve the question Commerce

considers "the descriptions of the merchandise contained in the petition, the initial

investigation, and the determinations of the Secretary (including prior scope

determinations) and the Commission."  19 C.F.R. § 351.225(k)(1).  Only if those

criteria "are not dispositive" of the scope issue will Commerce then consider "(i)

The physical characteristics of the product; (ii) The expectations of the ultimate

purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2). *See Arcelormittal Stainless Belgium v. United States*, 694 F.3d 82, 84 n.4 (Fed. Cir. 2012).

In this case the stated scope of the Orders covers "certain magnesia carbon bricks" – MCBs. 75 Fed. Reg. at 57,257; 75 Fed. Reg. at 57,443. The scope language references only MCBs, and the technical specifications that follow define *which* MCBs are covered. The most important of these is that to be covered by the scope, an MCB must contain at least 70 percent magnesia. *Id.* MAC bricks are a distinct type of refractory bricks from MCBs that also contain magnesia and carbon, but that also contain added alumina. JA235. Some MAC bricks contain less than 70 percent magnesia, but many MAC bricks, including the Fedmet Bastion® MAC bricks at issue in this case, contain more than 70 percent magnesia. JA24.

Although there is *no* language in the orders directly referencing MAC bricks, because the scope language contains specifications of magnesia and carbon that arguably *could* be read to also apply to MAC bricks, it was reasonable for Commerce to conclude that there was language in the Orders that was "subject to interpretation" and to therefore consult the sources identified in 19 C.F.R. § 351.225(k)(1). The record of the original Commerce investigation, however,

demonstrates that from the outset Commerce understood that Resco intended to exclude MAC bricks from the scope of the investigations, and that Commerce adopted the scope language in the Orders subject to the understanding that this language operated to exclude MAC bricks. In addition, the record of the ITC's investigation shows that it too excluded MAC bricks from the scope of its injury determination. Accordingly, Commerce's subsequent finding in the *Final Scope Determination* that MAC bricks are within the scope of the Orders is unsupported by substantial evidence.

### 1.    The Petition Excluded MAC Bricks

The Petition defined the subject merchandise as follows:

> Imports covered by this petition consist of certain chemically bonded (resin or pitch), magnesia carbon bricks ("MCB") whose magnesia component contains at least 70 percent magnesia ("MgO"), regardless of the source of raw materials for the MgO, with carbon levels ranging from trace amounts to 30 percent, regardless of enhancements, regardless of whether or not anti-oxidants are present. The scope of this investigation excludes alumina-carbon bricks, alumina-silicon carbide-carbon bricks and all dolomite class bricks. Certain MCB that are the subject of this order are currently classifiable under subheadings 6902.10.10.00, 6902.10.50.00, 6815.91.00.00 and 6815.99. While HTSUS subheadings are provided for convenience and customs purposes, the written description is dispositive.

JA492-493. As noted, this definitional language does not mention MAC bricks, even though some MAC bricks also contain more than 70 percent magnesia and contain carbon within the specified levels. This is true of not only Fedmet's MAC

bricks, but also MAC bricks sold by domestic producers, including Defendants-Appellees ANH and Magnesita.  JA24 and 51-73.[3]  The Petition made clear, however, only a few pages later that MAC bricks were not intended to be covered by this scope definition:

> There are several types of standard refractory bricks *in addition to magnesia carbon, the subject of this petition*. Among the most important are fired magnesite, fired bauxite, magnesia dolomite and *magnesia aluminum* [sic] *carbon brick*.[4]  Each of these bricks possess certain unique properties, which make their use highly preferred, and even required, for certain uses in the lining of steel, ceramic, and other furnaces and holding vessels. The different types of bricks are not generally substitutable in a technical sense, due to varying chemical and physical properties and wear characteristics.

JA498.  Thus the Petition stated expressly that (i) MAC bricks are one of "several types of standard refractory bricks" *other than* the subject MCBs; (ii) that MAC bricks and the other named types of non-subject refractory bricks each contain unique properties for specific uses in steel furnaces and holding vessels (*i.e.*, ladles); and (iii) that MAC bricks are not generally substitutable for MCBs due to varying chemical and physical properties and wear characteristics.[5]  In short, the

---

[3] *See also*, JA249-255; 332-333.

[4] As noted, *supra,* the use of the term "aluminum" is a typographical error and should be read as "alumina."  There is no such thing as "magnesia aluminum carbon brick."  *See* JA242-243.

[5] As discussed in *infra* at Part D, this statement by Resco in the Petition is not only explicit and unequivocal, but also factually correct and fully consistent with, and corroborated by, the information that Fedmet placed on the record of the scope inquiry proceeding regarding its Bastion® MAC bricks, which have different chemical composition and performance properties from MCBs, and are used in different areas of the steel ladle lining and are not used in furnace linings.  *See* JA 235-237, 245-247; JA 335-337.

above-quoted passage makes clear that MAC Bricks, as well as fired magnesite bricks, fired bauxite bricks, and magnesia dolomite bricks, are *different products* from subject MCBs, and were not intended to be encompassed within the term MCBs as used in the Petition.  This approach is consistent with industry usage, which recognizes MCBs, MAC bricks, magnesite bricks, *etc*. as distinct products. JA236-237.

Were the record silent with respect to the potential tension between the magnesia and carbon specifications in the scope definition language in the Petition and the express exclusion of MAC bricks a few pages later, Commerce might, perhaps, be justified in finding that the description of the merchandise in the Petition and the investigations was not dispositive of the issue of whether MAC bricks were within the scope of the Orders.  The record, however, is not silent on this point.  Within a few days after the filing of the Petition, Commerce identified this precise issue – whether the scope language recommended by Resco in fact operated to exclude MAC bricks – and adopted the scope language that was eventually carried forward into the Orders only after being assured by Resco that it did.

### 2. Commerce Confirmed During The Pre-Initiation Review Of The Petition That The Scope Language Proposed In The Petition Was Intended To Exclude MAC Bricks

Commerce noted during its pre-initiation review of the Petition that the scope language proposed by Resco described the physical specifications of subject MCBs only in terms of the magnesia and carbon content, and did not expressly define the physical characteristics that would distinguish MCBs from these other, non-subject types of refractory bricks, including MAC Bricks, described in the Petition. Commerce therefore sent Resco a supplemental questionnaire on August 4, 2009 in which it posed the following questions under the section of the questionnaire subtitled "Scope":

> 6. On page 10 of the petitions you state "{t}here are several types of standard refractory bricks in addition to MCB, the subject of this petition. Among the most important are fired magnesite, fired bauxite, magnesia dolomite, and *magnesia aluminum carbon brick*." How does your proposed scope exclude these types of refractory bricks?
>
> 7. If necessary based on the response to the questions above, please provide a revised version of the scope of the investigations as it should appear in the *Federal Register*.

JA505-506 (emphasis added).

Thus, less than one week after the filing of the Petition, and before even initiating the investigation, Commerce read the language at page 10 of the Petition precisely as Fedmet argues it should be read – as an unqualified exclusion of MAC bricks from the scope. Even more significantly, Commerce raised with Resco *the*

*precise issue* that was later presented by Fedmet's scope ruling request – whether the express exclusion of MAC bricks was fully reflected in the scope definition language that Resco was proposing.  Had Commerce somehow misconstrued Resco's stated intention to exclude MAC bricks from the scope of the investigations, this was Resco's opportunity to so inform Commerce.  Resco, instead confirmed that MAC bricks and the other named products were outside the scope, and, equally important, it advised Commerce that the scope language it had already proposed was adequate to accomplish this exclusion:

> The scope of our petition focuses only on MCB.  These other products do not provide the same performance where MCB are used in steelmaking and steel handling applications.  Their use or substitution results in significantly lower performance, higher costs and can be disruptive to the steel maker's operation.  No other system over the last 35 years helped steel makers achieve performance levels in furnaces and ladles like MCB, which are used in the *most* critical and high wear areas of furnaces and ladles.

JA506 (emphasis in original).[6]  Resco went on to state in response to question 7 that "Petitioner does not believe it is necessary to revise the scope based on the responses to the questions above."[7] *Id.*

---

[6] In the *Preliminary Scope Determination*, Commerce reasoned that Resco's response that "these other products do not provide the same performance" as MCBs was inconclusive because it was a "collective answer," and did not reference MAC bricks specifically.  JA367-368.  This *non sequitur* ignores the context of the question – that Commerce had already recognized, based on Resco's express statement in the Petition, that MAC bricks were excluded, and was seeking to confirm with Resco that the scope language operated to effectuate that exclusion.

In the *Final Scope Determination* Commerce found the foregoing exchange between itself and Resco to have been ambiguous because MAC bricks are referenced "by name only" and Resco did not define the specifications or characteristics defining MAC bricks.  JA480 and 484.  This conclusion re-writes the history of Commerce's investigation.  Commerce raised with Resco at the outset of the investigation the precise issue of how the scope language proposed by Resco (and ultimately adopted, without material alteration, in the Orders) operated to exclude MAC bricks.  Resco stated without qualification that its scope description excluded MAC bricks and Commerce did not pursue the matter further.  Having determined during the investigation to distinguish between subject MCBs and non-subject MAC bricks "by name only," that is, based on the understood meaning of that term in the industry, Commerce may not later claim that its own failure to further define those terms during the investigation renders the stated scope of the Orders ambiguous, and then rely on the factors in 19 C.F.R. § 351.225(k)(2) to include with the scope of the Orders the very product that Resco and Commerce both clearly intended the scope language to exclude.

This Court has recognized that it is Commerce's "'responsibility ... to determine the scope of the final orders.' " *See Walgreen*, 620 F.3d at 1355 (quoting

---

[7] As discussed in detail in part B., *infra*, Resco provided the same information to the ITC in its investigation, testifying that MAC bricks had different physical characteristics and end uses from MCBs.  JA396.

*Duferco*, 296 F.3d at 1097).  The statute directs Commerce to describe the

merchandise subject to an order "in such detail as the administering authority

deems necessary."  19 U.S.C. § 1673e(a)(2)(2012); *see Mid Continent Nail* at *1.

Here, Commerce exercised that statutory authority by accepting Resco's

representation that the scope language in the Orders accomplished the stated intent

of excluding MAC bricks without the need for any definition of that term.

Commerce cannot now reinterpret that same scope language to reach the opposite

result.  To do so runs afoul of the requirement that antidumping and countervailing

duty orders may only be applied to merchandise that they may be reasonably

interpreted to include.  As this Court recently observed, this legal requirement

ensures that:

> Commerce will provide "adequate notice of what conduct is regulated
> by the order." *See Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474
> F.3d 1281, 1292 (Fed.Cir.2007). The requirement therefore reflects
> the broader due-process principle that before an agency may enforce
> an order or regulation by means of a penalty or monetary sanction, it
> must "provide regulated parties fair warning of the conduct [the order
> or regulation] prohibits or requires."

*Mid Content Nail*, *4 (additional citations omitted).

The CIT, however, affirmed Commerce's finding of ambiguity, finding that

the record showed that industry practice recognized two types of MAC bricks.  The

first, dubbed by the court as "low alumina" MAC bricks, contain more than 70

percent magnesia, while the second, described by the court as "high alumina" have

less than 70 percent magnesia.  *Fedmet*, 911 F.Supp.2d at 1351, 1354, JA4, 6-7.

The court concluded that the fact that the term MAC brick was used in the industry

to refer to bricks both above and below the 70 percent threshold in the Orders

rendered ambiguous the entire discussion confirming that MAC bricks were

outside the scope of the Orders.  JA7.

There are two problems with this reasoning.  First, there is no evidence in

the record that the refractories industry distinguishes between "high alumina" and

"low alumina" MAC bricks, nor is there any support for the proposition that the 70

percent magnesia threshold has any particular significance in the refractories

industry.  The supposed distinction between high and low alumina MAC bricks

appears to have been coined for the first time in ANH's November 18, 2011 scope

inquiry questionnaire response.  JA159-160.  ANH provided no evidence that these

terms are used or recognized in the industry, however, and a review of that

submission makes clear that ANH was merely alluding to the fact that the alumina

level of a MAC brick varies inversely with the level of magnesia.  *Id.*  That is, the

record shows that MAC bricks may include as much as 40-50 percent alumina and

may contain anywhere from 50-90 percent magnesia.  JA332.[8]

---

[8]ANH's novel classification of MAC bricks into high and low alumina variants stems from the fact that a MAC brick cannot simultaneously meet the maximum for both ingredients.  That is, a MAC brick containing 40-50 percent alumina ("high alumina") would necessarily have less than 70 percent magnesia, while a MAC brick containing 90 percent magnesia would necessarily contain significantly less percent alumina (low alumina).

Second, and more importantly, nothing in the record of the original investigation supports the conclusion that Resco's repeated, consistent, and unqualified references to MAC bricks may be reasonably construed as referring to only some, but not all, MAC bricks.  To the contrary, Resco's response to Commerce's request for clarification of the scope language forecloses that interpretation.   The specific question Commerce put to Resco was "*how*" the scope language it was proposing excluded MAC bricks.  JA505 (emphasis added). Had Resco responded by stating that the scope language excluded MAC bricks by virtue of the 70 percent magnesia specification contained therein, then it might be reasonable to infer that any MAC bricks that exceed 70 percent magnesia content were nevertheless intended to be within the scope.  But that is not how Resco responded.  Rather than parsing the chemical specifications in its proposed scope definition, Resco responded by reiterating that the Petition covered "only MCB" and that MAC bricks were a different product that would not be confused with MCBs due their different performance characteristics.  JA506.  In other words, the reason MAC bricks were excluded by the scope language Resco proposed was not because of the magnesia content specification therein, but rather, because the *MAC bricks are not "MCBs" at all*.

The CIT, however, concluded that the record supports the conclusion that the terms MCB and MAC bricks are not sufficiently delineated in the refractories

industry to serve as a basis for distinguishing between them.  According to the

CIT,

> Record evidence of industry naming conventions reasonably suggests
> that so long as the magnesia content of a brick with added alumina
> remains above 70%, it can be called *either* an MCB *or* an MACB.

*Fedmet*, 911 F Supp.2d at 1354, JA6.  This conclusion is wrong on at least two

counts.  First, the 70 percent magnesia threshold for MCBs is not drawn from, and

has no support in, industry usage or nomenclature.  To the contrary, MCBs

typically contain well in excess of 70 percent magnesia, often more than 90

percent.  JA82.  Resco (and Commerce) understandably set the magnesia threshold

at 70 percent – below the level commonly seen in MCBs – as a means of

precluding circumvention of the orders by making slight adjustments to the

magnesia content of an MCB to remove it from the scope of the Orders.  JA119.

Second, the record does not support the CIT's conclusion that the same

product can be called either an MCB or a MAC brick.  The CIT cites two pieces of

record evidence for this proposition.  The first is product specification sheets for

two refractory bricks sold by Vesuvius, another supplier of refractory products to

the U.S. market.  The specification sheets identify two trademarked Vesuvius

products, Supermag® 7F7-7X and Supermag® 7S5-7.  JA 172-173.  As the court

correctly notes, the alumina contents of these products indicates they are MAC

bricks.  JA6.  Nothing in these specification sheets indicates that Vesuvius markets

them as MCBs.  Rather, they are described as a "high density magnesia graphite

product based on high purity fused magnesia with an alumina addition and natural

flake graphite."  JA171.  This written description aptly defines a MAC brick.[9]

The second piece of "evidence" the CIT cites for the proposition that the

terms MAC brick and MCB are used interchangeably consists of advertisements

drawn from the internet advertising what are ostensibly Chinese MCBs that contain

some added alumina.  JA6; JA379-383.  The record, however, contains no actual

specification sheets concerning these products or any information about the

companies that ostensibly produce and sell them.  Thus, there is no way to know

whether the use of the term MCB in these advertisements was an error in

translation, or whether the alumina content shown on the advertisements is

accurate.  This one "mere scintilla" fails to meet the substantial evidence threshold

when considered in light of the detailed and unrebutted record evidence, discussed

in the following section, showing the consistent practice in the industry of

---

[9] Contrary to the contentions of the Government and intervenors below, it has never been Fedmet's argument that whether a particular product is within the scope of the Orders turns on whether it is *called* an MCB or a MAC brick.  Rather, Fedmet's argument is that these terms have an understood meaning in the industry, and Commerce relied upon that understood meaning in defining the scope of the Orders to exclude MAC bricks.  The record developed in the scope proceeding demonstrates that the industry defines the term MAC brick to be a refractory product that contains at least 50 percent magnesia and sufficient added alumina to promote spinel formation.  The spinel formation during use is what gives MAC bricks their distinct properties and performance characteristics, which, as Resco emphasized in the Petition and in its ITC testimony, are significantly different from the properties of subject MCBs.  JA396, JA498.

distinguishing between MCBs and MAC bricks based on the presence of added alumina.

In *Eckstrom Industries*, this Court reversed a Commerce scope determination under circumstances very similar to these. The issue in that case was whether an antidumping duty order on stainless steel pipe fittings covered cast pipe fittings. The physical description and specifications set forth in the scope definition language of the order, read in isolation, were broad enough to cover cast pipe fittings, and the scope of the order contained no express exclusion of cast fittings. 254 F.3d at 1070. Yet the Court concluded that both the petition and the resulting ITC investigation were "clearly directed at wrought fittings" and not at cast fittings, and on that basis, reversed Commerce and held that the orders in question did not extend to cast pipe fittings. *Id*. at 1074-1076.

Here, as in *Eckstrom Industries*, the record shows that from the outset the MCBs investigations were "clearly directed at" only MCBs, and did not cover MAC bricks, fired magnesite, fired bauxite, magnesia dolomite, or other types of non-subject bricks. Commerce may not walk away from the clear import of the investigation record by belatedly expressing uncertainty over the terms in which it opted to address the scope. Commerce was clearly aware at the time of the original investigation that the excluded types of refractory bricks – MAC bricks, as

well as fired magnesite bricks, fired bauxite bricks, and magnesia dolomite bricks – had been identified "by name only."

Having chosen to accept Resco's assurances that the scope clearly excluded MAC bricks, and not to insist that Resco provide technical specifications for MAC bricks and the other non-subject refractory bricks, Commerce cannot now claim that the absence of such specifications renders the scope of the Orders ambiguous. *See Arcelormittal Stainless*, 694 F.3d at 88 (holding that Commerce's failure to state whether certain dimensional specifications were based on actual or nominal thicknesses did not render the scope of an order ambiguous for purposes of 19 C.F.R. § 351.225(k)). The various types of refractory bricks are terms of art in the refractories industry and Commerce clearly accepted Resco's representations that defining the non-subject bricks using these industry terms were sufficient. Accordingly, Commerce's only task in evaluating Fedmet's scope ruling request was to determine whether Fedmet's product is a MAC brick, as that term is understood in the industry. This Court has made clear, however, "consideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2)." *Arcelormittal Stainless*, 694 F.3d at 88, n.8. As discussed in the following section, the record shows, and no party has denied, that Fedmet's Bastion® bricks fully qualify as MAC bricks under the applicable industry usage.

### 3.    Fedmet's Bastion® Bricks Are MAC Bricks, Not MCBs

During the scope inquiry, Fedmet provided extensive information demonstrating that its Bastion® bricks are MAC bricks, and are not MCBs as those terms are understood in the industry.  First, Fedmet provided product specification sheets that clearly identify the product as "Magnesia Alumina Carbon Brick." JA31-33.  Fedmet also sells subject MCBs.  Those bricks are sold under the distinct "Pinnacle®" product line.  *Id.*, JA26, JA82.  In addition, the specification sheet provides the chemical analysis showing that Bastion® bricks contain approximately 10 percent alumina (chemical formula $Al_2O_3$).  JA31-33.  The addition of alumina is the defining physical characteristic of MAC bricks.  The alumina, typically in the form of bauxite or corundum, is added in the production process to provide performance properties that are desirable in some applications. In particular, the alumina reacts with the magnesia in the brick when heated to steel-making temperatures to produce a mineral known as spinel.  JA25.  Spinel improves the performance of the bricks in certain areas of the steel ladle by promoting permanent expansion of the brick which prevents the formation of cracks and maintains that expansion even when the ladle cools between heats.  *Id.*

The spinel also reduces chemical attack from certain types of slags by closing the pores in the brick matrix. *Id.*[10]  MCBs do not contain added alumina.  *Id.*[11]

Second, Fedmet submitted its Ladle Refractories Brochure, which identified all of the various types of refractory bricks sold by Fedmet for use in steel ladles, including the Pinnacle® line, which consists of subject MCBs, the Paragon® line, which consists of dolomite brick, the Durachrome® line, which consists of magnesia-chrome brick, the Oracle® line, which consists of AMC brick, and the Bastion® line of MAC bricks, which the brochure describes as "magnesia-alumina-carbon brick that provide in-site spinel formation for minimal steel penetration and superior thermal shock resistance." JA74-90.  As shown therein, Pinnacle® bricks (MCBs) and Paragon bricks® (dolomite) are designed for use along the slag line of the ladle, while Oracle® (AMC brick) and Bastion® (MAC brick) are designed for use in the barrel and bottom of the ladles.  As the ITC explained:

> Most steel producing companies use several types of refractory brick to line their furnaces and ladles. A variety of refractory products are

---

[10] However, the spinel makes the brick more prone to structural spalling, or fragmentation under certain circumstances, which is why MAC bricks and MCBs are not interchangeable.  JA403-404.  *See* discussion *infra* at Part D.

[11] MCBs do, however, sometimes include *aluminum*.  Aluminum is added in small amounts to MCBs to serve as an antioxidant.  *Alumina* is aluminum oxide, and is already fully oxidized.  It is added not as an antioxidant, but rather, as discussed in text, to promote the formation of spinel.  Potential confusion can result from the fact that, when subjected to certain kinds of testing, the aluminum in an MCB can be converted to alumina by the testing process itself.  Thus, some chemical analysis results of MCBs appear to show the presence of small amounts of alumina.  *See* JA125.

used because rates of wear and replacement of the refractory bricks vary significantly based on the type of steel being produced, individual furnaces used, and the various performance requirements of the different areas of the steel furnaces or ladle. *More specifically MCBs are only used in the most demanding areas of the furnace or ladles which is principally along the slag lines and at the top of the steel vessel where active chemical processes are taking place and impurities and waste tend to aggregate. Other less costly products are used at the bottom and lower sides of the furnace or ladles* where slag conditions are less aggressive and will wear out at lower rates. MCBs and the other refractory bricks are strategically placed in the ladle so that the overall wear on the ladle is even and the ladle lining provides the lowest cost per ton of steel produced for refractories.

*ITC Final Determination* at I-9-10 (emphasis added) (footnotes omitted).

Third, Fedmet provided citations to, and relevant excerpts from, the *Pocket Manual Refractories Material,* a reference manual used in the refractories industry. JA51-57. This reference manual confirmed that MAC bricks are a recognized term in the refractories industry and that MAC bricks may contain between 50 to 90 percent magnesia and as much as 40-50 percent alumina. *Id.*[12] The *Pocket Manual* also confirmed that MAC bricks are not used in the same sections of the ladle as MCBs: "One application of the MAC bricks can be in the transition zone from ladle wall to slag zone, preferably if there are low ladle temperatures. The slag zone of the steel ladles is still the 'domain' of magnesia-carbon bricks due to their

---

[12] Refractory bricks with more than 50 percent alumina are called alumina-magnesia-carbon ("AMC") bricks. *See* JA333, 451. No party disputes that AMC bricks are outside the scope of the Orders.

better resistance to slags with high basicity and at higher ladle temperatures."
JA55.

Fourth, Fedmet provided product brochures, advertisements, and specification sheets of other producers, showing that they too produce and market MAC bricks whose specifications are comparable to those of Fedmet's MAC bricks. These included the Renegade® line of MAC bricks produced by North American Refractories Co., which is now owned by Defendant-Appellee ANH, and the C-Bond® line of MAC bricks produced by Defendant-Appellee Magnesita. North American Refractories Company describes its Renegade® bricks as a "magnesia-alumina-carbon" ladle brick. JA58-73. The product specification sheet shows a chemical composition of 86 percent magnesia, JA59, while the accompanying material safety sheet indicates that Renegade® bricks contain 5-10 percent "non-fibrous alumina." JA60. Further, the specification sheet explains that "these brick are specifically designed to prevent 'cobblestoning' and steel penetration due to a gradual permanent expansion in service." JA59. The latter description is a clear reference to permanent expansion resulting from spinel that is formed by the reaction of the magnesia and alumina during heating to steel making temperatures.

Magnesita describes its C-Bond® MAC brick as follows:

a premium grade magnesia-alumina-carbon brick with 6.5% retained carbon. The product is specifically designed to have good

> performance in ladle side walls and lower slag line transition zones in aluminum-killed, or combination silicon and aluminum-killed processes.  The brick is based on  high grade magnesia and fused alumina.  Special additions are included to enhance oxidation resistance, strength, and expansion in service."

JA426.  The chemical analysis provided by Magnesita shows that its product has 81.2 percent magnesia and 15.6 percent alumina.  *Id.*  Fedmet also provided information showing that Magnesita markets its MAC brick on its website as a distinct product from its MCBs, and that Magnesita had recently invested $10 million in two new MAC brick production lines at its facility in York, Pa. JA421, 423-424.

In short, Fedmet during the scope inquiry provided detailed record evidence that its Bastion® bricks are MAC bricks, and not MCBs, as those terms are used and understood in the refractories industry.  In the *Final Scope Determination* Commerce did not make any findings to the contrary.  Rather, Commerce concluded that because the original investigation did not define MAC bricks with reference to chemical and technical specifications, it could not determine whether "MAC bricks with a chemical composition like that of Fedmet Bastion® MAC bricks" were within the scope of Orders based on the 19 C.F.R. § 351.225(k)(1) factors.  JA480.  As discussed in the preceding section, that conclusion flies in the face of the record of the original investigations, which shows that Resco and

Commerce intended the scope language to exclude all MAC bricks without

qualification.

### C.    MAC Bricks Were Excluded From The ITC's Injury Determination And Thus May Not Lawfully Be Subject To Antidumping or Countervailing Duties Under The Orders

The record is clear that the ITC's investigation and affirmative injury

determination was limited to MCBs, and did not cover MAC bricks or other types

of refractory bricks.  As the Commission explained:

> In the preliminary phase of these investigations, the Commission defined a single like product that was coterminous with the scope of the investigations as defined by Commerce. The Commission found that the record indicated that MCBs are not used interchangeably with other refractory products. *The Commission noted that, compared with other refractory products, MCBs have distinct uses, differ in physical characteristics, are priced higher, and may require different production processes.*  Based on this evidence and absent any arguments to the contrary, the Commission defined the domestic like product as consisting of all MCBs.  In this final phase of the investigations, Petitioner Resco maintains the Commission should again define a single like product that is coterminous with Commerce's scope. The RHI Respondents indicate that they accept the definition of the domestic like product defined by the Commission in the preliminary phase of the investigations, although they note that refractory bricks of different compositions are competitive with MCBs in some applications.  *No party, however, objects to defining the domestic like product as coterminous with the scope of the investigations.*

*ITC Final Determination* at 6 (emphasis added).  As noted by the Commission,

Resco affirmatively argued that the Commission's investigation should be limited

to MCBs, and that the domestic "like product" should be similarly limited.  In the

prehearing staff conference, Resco testified in language reminiscent of that in the

Petition and in its supplemental questionnaire response to Commerce, that MAC

bricks and other types of refractory bricks were clearly distinct from MCBs and

should not be considered in the Commission's investigation and determination:

> other refractory products, such as fired magnesite, fired bauxite,
> magnesia dolomite, *and magnesia alumina graphite bricks*, and the
> subject merchandise do not have the same physical characteristics and
> uses are not perceived by producers and purchasers as substitutable
> and are easily differentiated by price.

JA396.[13]  Resco had strong tactical reasons for advancing this position before the

ITC.  A more expansive like product definition that encompassed other types of

refractory bricks could have weakened its injury case before the ITC.  Had the

Commission included MAC bricks and other non-MCB refractory products within

the same like product as MCBs, the import penetration and market share of subject

merchandise would have been reduced.  In addition, expanding the like product

would have expanded the composition of the domestic industry to include any

domestic producers who did not produce MCBs, but did manufacture other types

of refractory bricks.  *See* 19 U.S.C. § 1677(4)(A)(2012) (defining the domestic

industry as the producers of a domestic like product).  Not all refractories

producers produce all types of refractory bricks.  Resco, for example, does not

produce MAC bricks.  Thus, Resco had good reason for arguing to the ITC that the

---

[13] Magnesia alumina graphite brick is another term for MAC bricks.  JA23 and
31-33.

like product should be composed only of MCBs, and should not include MAC

bricks or other types of refractory bricks.

The Commission adopted Resco's position on the like product issue.  It

specifically noted that MAC bricks and the other refractory bricks described by

Resco were not covered by its investigation:

> MCB are considered to be the most durable refractory brick on the
> market for furnaces and ladle linings, especially around the slag line.
> While other refractory bricks, such as fired magnesite, fired bauxite,
> magnesia dolomite, and *magnesia alumina graphite bricks*, may be
> used in place of MCB, these alternatives do not have the same
> physical characteristics of MCB, are easily differentiated by price, and
> their uses are not perceived by the steel producers as substitutable.

*ITC Final Determination* at I-8 and n.13 (citing testimony of Resco's counsel in

the preliminary staff conference) (emphasis added).

The antidumping statute provides that in order to impose antidumping duties

on imported merchandise, there must be affirmative determinations by both

Commerce and the ITC.  19 U.S.C. § 1673(2012).  This requirement is the basis

for the rule that Commerce may clarify, but may not expand or alter, the scope of

an antidumping duty order.  The importance of an affirmative injury determination

is also underscored by the statutory provision regarding anticircumvention

determinations.  Unlike scope determinations, in anticircumvention determinations

Commerce may, under certain limited circumstances, expand the scope of an

existing order to include subassemblies and components or later-developed

merchandise that was not included in the original investigations.  19 U.S.C.

§ 1677j(b), (c), and (d)(2012).  Before reaching such a determination, however, the

statute requires Commerce to notify the ITC of the proposed inclusion of the

merchandise and to consider any advice from the Commission concerning whether

the inclusion of that merchandise would be inconsistent with the ITC's affirmative

injury determination.  19 U.S.C. § 1677j(e)(2012).  It follows from this statutory

scheme that the failure of the ITC to have investigated or reached an affirmative

determination with respect to MAC bricks is itself sufficient grounds for holding

that the scope of the Orders does not cover MAC bricks.  *See Wheatland Tube Co.*

*v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (holding that permitting

Commerce to include products not covered by the ITC's investigation in the scope

of an antidumping duty order  "would . . . frustrate the purpose of the antidumping

laws because it would allow Commerce to assess antidumping duties on products

intentionally omitted from the ITC's injury investigation.").[14]

        In the *Final Scope Determination* Commerce dismissed the significance of

the ITC's discussion of MAC bricks because the Commission did not specify the

chemical composition and technical specifications of the refractory bricks that it

regarded as excluded.  JA480.  In addition, Commerce claimed that the ITC had

---

[14] *Accord*, *Eckstrom*, 254 F.3d at 1075 n. 3 (citing *Wheatland* and holding that because the totality of the evidence showed that cast pipe fittings were not within the scope of the orders, it was not necessary to reach the question of whether the exclusion of cast pipe fittings from the ITC's injury investigation, standing alone, would conclusively establish that the merchandise was not covered by the order.).

included in its pricing analysis a specific Resco MCB product, Maxline® 10 AFX, which Commerce described as "an MCB with added alumina." Finally, Commerce quoted, in a footnote, the ITC's statement that "MCBs are produced in a large number of grades with different levels of magnesia, carbon, and different contributions of additives, depending upon the intended specific applications," and that "MCBs may contain other substances such as antioxidants that range from trace amounts to 15 percent by weight." JA480.

The ITC, however, had no reason to have discussed the chemical or technical specifications of MAC bricks and the other excluded refractory bricks. As already discussed, it was Resco that had opted to identify those products only by their common trade name, and Commerce, after sending Resco a supplemental questionnaire on this very point, chose to accept Resco's representations that these descriptions were sufficient. It is the responsibility of Commerce to define the scope of the imported merchandise, and it was not the job of the ITC to supply chemical or technical specifications that Commerce itself had found unnecessary. As to Commerce's claim that the ITC in its preliminary determination included in its pricing analysis a Resco MCB that contained "added alumina," JA480, this assertion is not supported by the ITC's preliminary determination, which makes no

reference to products containing alumina in its pricing analysis.[15]  Second, and more fundamentally, Commerce cannot substitute its own interpretation of one ITC pricing specification in the ITC's preliminary investigation for the clear and unambiguous statements by the ITC in the *ITC Final Determination* that its investigation and affirmative determination covered only MCBs, and not other refractory products such as fired magnesite, fired bauxite, magnesia dolomite, and MAC bricks.

For its part, the CIT found that the question of whether or not the ITC considered MAC bricks in its injury investigation is "irrelevant" because there is substantial evidence that MAC bricks are "interchangeable" with MCBs.  *Fedmet*, 911 F. Supp.2d at 1357, JA10.  This conclusion flies in the face of the ITC's like product determination, with found that other types of refractory bricks "are not used interchangeably with MCBs."  *ITC Final Determination* at 6.  Significantly, the ITC reached this determination despite recognizing that "refractory bricks of different compositions are competitive with MCBs in some applications." *Id.*

---

[15] The ITC's specification for the applicable pricing category referenced by Commerce is "resin bonded, magnesia-carbon brick for ladles with a carbon content of 10 percent, fused grain and *antioxidant additions* that correspond to Resco's brand Maxline 10 AFX." *Certain Magnesia Carbon Bricks from China and Mexico*, USITC Pub. 4100, Inv. Nos. 701-TA-468 and 731-TA-1166-1167 (Preliminary) (September 2009) at V-2 (emphasis added).  Alumina is *not* an antioxidant.  Alumina is aluminum oxide, and is already fully oxidized, JA24-25; JA235-236.

Finally, the language from the *ITC Final Determination* regarding the inclusion of additives relied upon by Commerce proves nothing. No one disputes that MCBs are produced in different grades and included various additives and antioxidants.[16] This does not mean, however, that MAC bricks are simply another type of MCB. That claim is belied by Resco's express statements in the Petition and its sworn testimony before the ITC, both of which clearly recognize MAC bricks as a distinct product from MCBs, as well as by the fact that defendant-intervenors ANH and Magnesita both produce and market MAC bricks as a distinct product line from MCBs.

In summary, the record is clear that the ITC, like Commerce, focused its investigation exclusively on MCBs, and did not investigate, or reach an affirmative injury determination with respect to, MAC bricks or other types of refractory bricks. This alone is sufficient grounds to find Commerce's *Final Scope Determination* is contrary to law.

### D.    Commerce's Analysis Of The Factors Enumerated In 19 C.F.R. § 351.225(k)(2) Is Unsupported By Substantial Evidence

Because the description of the merchandise in the Petition, the initial Commerce and ITC investigations, and the Commerce and ITC final

---

[16] As noted in the previous footnote, alumina is not an antioxidant. Nor is the addition of alumina an "enhancement" as that term is described in the Orders. *See Antidumping Order* at 57,257 ("for example, magnesia carbon bricks can be enhanced with coating, grinding, tar impregnation or coking, high temperature heat treatments, anti-slip treatments or metal casing").

determinations in the case are "dispositive" of the fact that MAC bricks were excluded from the Orders, there is no basis for considering the additional factors enumerated in 19 C.F.R. § 351.225(k)(2).  *Eckstrom Industries*, 254 F.3d at 1076.[17] However, even assuming, *arguendo*, that Commerce was justified in considering the 19 C.F.R. § 351.225(k)(2) factors, Commerce's findings are unsupported by substantial evidence and should be reversed by this Court.

1.    **The Physical Characteristics of The Product**.

In the *Final Scope Determination* Commerce concluded that Fedmet's Bastion® MAC bricks "exhibit the same physical characteristics and performance properties of an in-scope MCB," and that they "can be used for the same applications as in-scope MCBs."  JA483.  This finding is contradicted by the evidence in the record.

First, Commerce's finding is contrary to the ITC's final injury determination, wherein the Commission found that MCBs possess distinct physical characteristics and uses from other types of refractory bricks:

> MCBs are used to line lower sidewalls, upper sidewalls, slag lines, and roofs of ladles and ladle furnaces involved in steel production, where they come in contact with both molten steel and molten slag. Other types of refractory brick also have high thermal resistance and some are used in steelmaking applications, but MCBs are considered

---

[17] "Dispositive" in this context means that these sources  "definitively answer the scope question."  *Sango International, L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

to be the most durable refractory bricks on the market for ladle
linings, especially around the slag line.

*ITC Final Determination* at 6 (footnotes omitted).  With respect to MAC bricks

specifically, the Commission found that "other refractory bricks, such as fired

magnesite, fired bauxite, magnesia dolomite, and magnesia alumina graphite bricks

. . . do not have the same physical characteristics of MCB, are easily differentiated

by price, and their uses are not perceived by the steel producers as substitutable."

*Id.* at I-8.

Second, Commerce's conclusion also ignores the extensive and detailed

evidence provided by Fedmet during the scope inquiry demonstrating that its MAC

bricks differ in physical characteristics from MCBs due to the addition of alumina,

which imparts different performance characteristics to the brick by promoting the

*in situ* formation of spinel at steel making temperatures, resulting in permanent

expansion of the brick.  JA21, 25-26; JA119, 121; JA140; JA235-236, 238, 242-

243, 245-246.  Fedmet also noted that these differences in physical properties

affect the specific applications of MCBs and MAC bricks.  MCBs are used

primarily in the slag zones of steel ladles and in basic oxygen steel furnaces

("BOF") and electric-arc steel furnaces ("EAF").  MAC bricks, in contrast, are

generally used in different sections of steel ladles, primarily side walls and

transition zones, and are not generally used in BOF or EAF steel furnaces.  JA237,

246-247, and 249-255; JA335.

Commerce chose to disregard the findings of the ITC during the original investigation and the detailed record evidence provided by Fedmet in favor of a single article that Commerce found on the internet from an internet publication called "*Millennium Steel*."  JA374-377.  No evidence in the record authenticates the *bona fides* of this publication or the credentials of the authors of this study.  Moreover, even a cursory review of the article shows that Commerce misconstrued both the conclusions and the import of this article, which actually confirms the important differences in physical characteristics between MCBs and MAC bricks.

In the *Final Scope Determination* Commerce claims that the *Millennium Steel* article "clearly demonstrates that the *in-situ* formation of spinel, as a result of the added alumina, did not impart different performance properties or result in different end uses associated with MCBs."  JA483.  It is clear, however, that the article states nothing of the sort.  To the contrary, the article purports to be an investigation of whether "magnesia-spinel-carbon brick," which in context is clearly a synonym for MAC brick, offered advantages over the use of MCBs in certain applications.  The stated subject of the article was to examine potential applications of what the article expressly characterizes as "the new brick" to determine whether its use in slag zones offered improvements over MCBs.  JA377.  Thus, at a minimum, the *Millennium Steel* article confirms that as far back as 2007, MAC bricks were recognized as a new and different product from MCBs.  The

article goes on to explain that "recent developments" in the refractories industry involve the use of refractory bricks containing alumina, and the point of the article was to examine whether this "new" type of refractory brick, *i.e.* MAC bricks, could be used in slag zones as an improvement over MCBs. JA375. Thus, rather than confirming that MAC bricks have the same physical characteristics as MCBs, the article in fact identifies and discusses the *different* physical properties of the then-newly developed MAC bricks, and investigates whether those different physical properties may offer advantages over MCBs in particular applications.

In particular, the article stresses that MAC bricks offer different physical properties from MCBs because they promote *in situ* formation of spinel, and emphasizes that the key issue in using MAC bricks is optimization of the degree of expansion from the spinel: "the degree of formation of $MgAl_2O_4$ secondary spinel governs the expansion behaviour of the brick which is optimised to get just sufficient tightening of the joints to prevent liquid slag penetration. Excessive expansion may lead to development of stresses which causes structural spalling." JA375. This statement is fully consistent with the ITC's findings and with the information Fedmet provided during the scope inquiry. The risk of structural spalling (chipping or flaking) is one important reason MAC bricks despite their advantages in *some* steel making applications (side walls and transition zones of steel ladles) are not substitutable for MCBs in other applications (ladle slag lines,

BOF furnaces, and EAF furnaces).  JA403.  As noted, the ITC noted in its

investigation "refractory bricks of different compositions are competitive with

MCBs in some applications," *ITC Final Determination* at 6.  Thus, the mere fact

that there may be some overlap of uses between MCBs and MAC bricks does not

undermine the significant differences in physical characteristics between the two

products.

    In the *Final Scope Determination*, Commerce also dismissed the information

placed on the record by Fedmet from the *Pocket Manual* on the ground that in

describing the chemical composition of MAC bricks, the *Pocket Manual* refers to

"'ranges,' and not 'limits.'"  JA484.  According to Commerce, this language is

thus ambiguous as to whether MAC bricks are defined as containing "between 40-

50 percent alumina or up to 50 percent alumina."  *Id.*[18]  The sentence in question

reads as follows: "Regarding the magnesia side of the variation range of MgO and

$Al_2O_3$ at the moment carbon-bonded bricks with 50-90 % MgO or 40-50 % $Al_2O_3$

are used in the Asian region.  These bricks are designated as MAC bricks."  JA54.

The use of the word "or" makes clear that MAC bricks are bricks with 50-90%

magnesia *or* up to 40-50 percent alumina.  In other words, if a MAC brick is at the

low end of the magnesia range (50 percent or slightly above), then it could have

---

[18] Commerce regarded this distinction important, because if the definition of a MAC brick were that it included between 40 and 50 percent alumina (*i.e.*, a minimum of 40 percent alumina) then Fedmet's Bastion® bricks would not be MAC bricks.

40-50% alumina.  Conversely, as the *Pocket Manual* makes clear, a MAC brick

could have as much as 90% magnesia and still be considered a MAC brick, in

which case the alumina content would be less than 10%.  There is no other

reasonable way to read this sentence.  Furthermore, as discussed *supra* at Part B.3,

this understanding of the chemical composition of MAC bricks is confirmed by the

practices of Defendant-Intervenors ANH and Magnesita, both of which market

MAC bricks with a magnesia content of over 80 percent and alumina content of 15

percent.[19]

Finally, Commerce downplayed the relevance of alumina and spinel

formation (which as previously noted, reduces slag penetration by creating

permanent expansion of the brick) by quoting a statement in the ITC final

determination which states that "the carbon in MCBs prevents liquid slag from

penetrating and eroding the bricks."  JA484.  From this statement, Commerce

concludes that "carbon plays the critical role in preventing slag penetration when

the magnesia content falls within the range identified in the scope of the Orders."

*Id.*  However, as is clear from the information provided by Fedmet, as well as by

the very *Millennium Steel* article relied on by Commerce, the significance of spinel

formation is that it promotes permanent expansion of the bricks, which, in turn,

reduces slag penetration of the joints between the bricks – "{t}he degree of

---

[19] *See* JA238-239 and 273-288.

formation of $MgAl_2O_4$ secondary spinel governs the expansion behaviour of the

brick which is optimised to get just sufficient tightening of the joints to prevent

liquid slag penetration." JA375.   This is entirely consistent with the ITC's

observation that the carbon in an MCB is important to preventing slag penetration

of the brick itself and in no way undermines the point that MAC bricks, by virtue

of the addition of alumina, have distinct physical and performance characteristics

from subject MCBs.

### 2.   Channels of Trade and Price and Manner of Sale and Advertising

As Commerce noted, all refractory bricks, whether subject or non-subject,

are sold in the same channels of trade and promoted similarly. JA485.   Commerce

went on to conclude, however that MCBs and MAC bricks are "interchangeable."

*Id.*  This finding is not only once again contradicted by the express findings of the

ITC, *ITC Final Determination* at I-8, but is also entirely unsupported by substantial

evidence.   Commerce based this conclusion on certain product advertisements it

pulled off of the internet.   According to Commerce, these advertisements describe

products comparable to Fedmet's MAC bricks that are advertised as capable of

being used in the slag lines of ladles, while similar advertisements for MCBs make

the same claims. JA485.   These advertisements by entities who were not parties to

Commerce's scope inquiry cannot reasonably be accepted over the detailed

information on the record, including the detailed ladle brochure showing the

distinct uses of MAC bricks in steel ladles.  JA257-272.  As stated in the *Pocket Manual*, "the slag zone of the steel ladle is still the 'domain' of magnesia-carbon bricks due to their better resistance to slags and high basicity and at higher temperatures."  JA55.

### 3.   Expectations of the Ultimate Purchaser and Ultimate Use of the Product

Commerce's finding under this factor in the *Final Scope Determination* is largely a summary of its previous conclusions.  Commerce reiterates its conclusion that MCBs and MAC bricks are used interchangeably in slag zones and other portions of steel ladles.  This finding once again ignores the detailed evidence provided by Fedmet on the different specific uses of MAC bricks.  JA485-486.  More importantly, Commerce's observation that MCBs and MAC bricks are both used in steel ladles ignores the fact that numerous different types of refractory bricks are used in steel ladles, including refractory bricks that are clearly outside the scope of the orders.  As Resco emphasized in the Petition, and as the ITC determined:

> While other refractory bricks, such as fired magnesite, fired bauxite, magnesia dolomite, and *magnesia alumina graphite bricks*, may be used in place of MCBs, these alternatives do not have the same physical characteristics of MCBs, are easily differentiated by price, and their uses are not perceived by the steel producers as substitutable.

*ITC Final Determination* at I-8.

## VIII.  **CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, Plaintiff-Appellant Fedmet respectfully requests that this Court (1) hold that the *Final Scope Determination* is unsupported by substantial evidence and is otherwise not in accordance with law; (2) hold that Fedmet's Bastion® MAC bricks are outside the scope of the antidumping and countervailing duty orders on MCBs from the People's Republic of China; and (3) remand this matter to the CIT with instructions to direct Commerce to instruct U.S. Customs and Border Protection to lift the suspension of liquidation on any entries of Fedmet's Bastion® MAC bricks that were suspended pursuant to the *Final Scope Determination* or otherwise, and to refund any cash deposits of estimated antidumping or countervailing duties collected on such entries.

Respectfully submitted,

/s/ Julie C. Mendoza
Julie C. Mendoza
Donald B. Cameron
R. Will Planert
Brady W. Mills
Mary S. Hodgins

MORRIS MANNING & MARTIN LLP
1401 Eye Street NW, Suite 600
Washington, D.C. 20005
(202) 216-4811
Dated: September 30, 2013          *Counsel to Fedmet Resources Corporation*

## ADDENDUM OF REQUIRED DOCUMENTS

### CONTENTS

| Document Title | Page |
|---|---|
| *Fedmet Resources Corporation v. United States*, 911 F.Supp.2d 1348 (Ct. Int'l Trade 2013) | JA000001 |

Westlaw.

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

United States Court of
International Trade.

FEDMET RESOURCES CORPORATION,
Plaintiff,
v.
UNITED STATES, Defendant,
and
ANH Refractories Company, Resco Products, Inc.,
and Magnesita Refractories Company, Defendants.

Slip Op. 13–68.
Court No. 12–00215.
May 30, 2013.

**Background:** Importer filed suit seeking review of
final scope ruling of Department of Commerce, de-
termining that importer's magnesia alumina carbon
bricks (MACBs) were within scope of antidumping
and countervailing duty orders on magnesia carbon
bricks (MCBs) from Mexico and People's Republic
of China. Importer moved for judgment on agency
record.

**Holding:** The Court of International Trade, Tsou-
calas, Senior Judge, held that importer's low-
alumina MACBs were within scope of antidumping
and countervailing duty orders on MCBs.

Motion denied.

West Headnotes

**[1] Customs Duties 114 ⚷84(6)**

114 Customs Duties
　114VII Protests and Review
　　　114k84 Court of International Trade
(Formerly Customs Court) and Proceedings Therein
　　　　114k84(6) k. Scope of inquiry or review.
Most Cited Cases
　"Substantial evidence," as required to uphold
an antidumping or countervailing duty scope ruling,
is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion,
taking into account the entire record, including
whatever fairly detracts from the substantiality of
the evidence. Tariff Act of 1930, §
516A(b)(1)(B)(i), 19 U.S.C.A. § 1516a(b)(1)(B)(i).

**[2] Customs Duties 114 ⚷21.5(5)**

114 Customs Duties
　114I Validity, Construction, and Operation of
Customs Laws in General
　　　114k21.5 Countervailing or Dumping Duties
　　　　114k21.5(5) k. Proceedings. Most Cited
Cases
　The plain language of the antidumping or coun-
tervailing duty order is paramount in determining
whether particular products are included in the
scope.

**[3] Customs Duties 114 ⚷21.5(5)**

114 Customs Duties
　114I Validity, Construction, and Operation of
Customs Laws in General
　　　114k21.5 Countervailing or Dumping Duties
　　　　114k21.5(5) k. Proceedings. Most Cited
Cases

**Customs Duties 114 ⚷84(6)**

114 Customs Duties
　114VII Protests and Review
　　　114k84 Court of International Trade
(Formerly Customs Court) and Proceedings Therein
　　　　114k84(6) k. Scope of inquiry or review.
Most Cited Cases
　A scope ruling is a highly fact-intensive and
case-specific determination that is particularly
within the expertise of Department of Commerce;
thus, challenging a ruling that imported merchand-
ise is within the scope of an antidumping or coun-
tervailing duty order is a course with a high barrier
to reversal. 19 C.F.R. § 351.225(k)(1, 2).

**[4] Customs Duties 114 ⚷21.5(5)**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

114 Customs Duties
    114I Validity, Construction, and Operation of
Customs Laws in General
        114k21.5 Countervailing or Dumping Duties
            114k21.5(5) k. Proceedings. Most Cited
Cases

Substantial evidence supported Department of
Commerce's determination that descriptions of im-
porter's magnesia alumina carbon bricks (MACBs)
in antidumping and countervailing duty petition for
magnesia carbon bricks (MCBs), initial investiga-
tion, and determinations of Commerce and Interna-
tional Trade Commission (ITC) were ambiguous as
to whether references to MACBs included low-
alumina bricks such as importer's MACBs, thus re-
quiring analysis of additional factors to determine
whether importer's MACBs were within scope of
antidumping and countervailing duty orders on
MCBs, even though MACBs generally were not
substitutable for MCBs, since record evidence in-
dicated that, without further chemical specification,
MACB could refer to only high-alumina MACBs,
to high-and low-alumina MACBs, or to MCBs with
added alumina, and low-alumina MACBs were of-
ten substituted for MCBs. 19 C.F.R. §
351.225(k)(1).

**[5] Customs Duties 114 ⬅➡84(6)**

114 Customs Duties
    114VII Protests and Review
        114k84 Court of International Trade
(Formerly Customs Court) and Proceedings Therein
            114k84(6) k. Scope of inquiry or review.
Most Cited Cases

It is not the role of the Court of International
Trade to reweigh evidence before Department of
Commerce regarding whether an imported product
falls within the scope of an antidumping or counter-
vailing duty order.

**[6] Customs Duties 114 ⬅➡21.5(5)**

114 Customs Duties
    114I Validity, Construction, and Operation of
Customs Laws in General

        114k21.5 Countervailing or Dumping Duties
            114k21.5(5) k. Proceedings. Most Cited
Cases

Substantial evidence supported Department of
Commerce's determination that importer's magnesia
alumina carbon bricks (MACBs), with more than
70% magnesia, thus referred to as low-alumina
MACBs, were within scope of antidumping and
countervailing duty orders for magnesia carbon
bricks (MCBs), given physical characteristics of
MACBs that were similar to those of in-scope
MCBs, ultimate use of MACBs, and manner in
which MACBs were advertised. 19 C.F.R. §
351.225(k)(2).

**Trademarks 382T ⬅➡1800**

382T Trademarks
    382TXI Trademarks and Trade Names Adjudic-
ated
        382Tk1800 k. Alphabetical listing. Most
Cited Cases
    Bastion.

**Trademarks 382T ⬅➡1800**

382T Trademarks
    382TXI Trademarks and Trade Names Adjudic-
ated
        382Tk1800 k. Alphabetical listing. Most
Cited Cases
    Vesuvius.

**\*1349** Morris, Manning & Martin LLP, Washing-
ton, DC (Jeffrey O. Frank, Brady W. Mills, Donald
B. Cameron, Julie C. Mendoza, Mary S. Hodgins,
and R. Will Planert) for Fedmet Resources Corpor-
ation, Plaintiff.

Stuart F. Delery, Principal Deputy Assistant Attor-
ney General; Jeanne E. Davidson, Director, Patricia
M. McCarthy, Assistant Director, Commercial Lit-
igation Branch, Civil Division, United States De-
partment of Justice, Washington, DC (Antonia R.
Soares); Office of Chief Counsel for Import Ad-
ministration, United States Department of Com-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

merce, Devin S. Sikes, Of Counsel, for the United States, Defendant.

Jochum, Shore & Trossevin, PC, (Marguerite Ellen Trossevin, Andrew M. Shore, James J. Jochum, Washington, DC, and Reza Karamloo) for ANH Refractories Company, Defendant–Intervenor.

Doyle, Barlow & Mazard PLLC, Washington, DC ( Camelia C. Mazard) for Resco Products, Inc., and Magnesita Refractories Company, Defendant–Intervenors.

### OPINION

TSOUCALAS, Senior Judge:

Before the court is Fedmet Resources Corporation's ("Fedmet") USCIT Rule 56.2 motion for judgment on the agency record appealing the United States Department of Commerce's ("Commerce") final**\*1350** scope ruling regarding antidumping and countervailing duty orders on magnesia carbon bricks ("MCBs"). Pl.'s Mot. J. Agency R. at 1–2 ("Pl.'s Br."); *see Certain Magnesia Carbon Bricks from the People's Republic of China and Mexico: Final Scope Ruling—Fedmet Resources Corporation,* Case Nos. A–201–837, A–570–954 and C–570–955 (July 3, 2012), Pub. R.2d 74 at 1–2 ("*Final Scope Ruling* ").[FN1] Fedmet imports "Bastion"-trademarked magnesia alumina carbon bricks ("MACBs"), which contain alumina in addition to magnesia and carbon. Pl.'s Br. at 6. In its *Final Scope Ruling,* Commerce determined that Fedmet's Bastion bricks are within the scope of the antidumping and countervailing duty orders. *Final Scope Ruling* at 1–2. Fedmet argues that Commerce's ruling is not based on substantial evidence or otherwise in accordance with the law because MACBs have distinct physical and commercial characteristics from in-scope MCBs, and because the International Trade Commission ("ITC") did not consider MACBs in its injury determination. Pl.'s Br. at 9–11; *see Certain Magnesia Carbon Bricks from China and Mexico (Final),* US-ITC Pub. 4182, Inv. Nos. 701–TA–468 and 731–TA–1166–1167 at 3–6 (Sept. 2010) ("*ITC Fi-*

*nal Determination* "). Commerce and defendant-intervenors Resco Products, Inc. ("Resco"), ANH Refractories Company, and Magnesita Refractories Company (collectively, "defendant-intervenors") oppose the motion. *See* Commerce's Resp. Pl.'s Br. at 7–8 ("Commerce Resp."); ANH's Resp. Pl.'s Br. at 2–5 ("ANH Resp."); Magnesita's & Resco's Resp. Pl.'s Br. at 4–5 ("M & R Resp.").

> FN1. Commerce implemented its new electronic filing system during the course of the proceedings below, causing the administrative record to be subdivided into four parts. Unless otherwise noted, all documents in the first, second, third, and fourth divisions of the record hereinafter will be designated "R.1st," "R.2d," "R.3d," and "R.4th," respectively. The first and second portions of the record contain public documents, while the third and fourth portions contain confidential documents.

### BACKGROUND

In September 2010, Commerce published antidumping duty orders on MCBs from Mexico and the People's Republic of China ("PRC"), and a separate countervailing duty order on MCBs from the PRC. *Certain MCBs From Mexico and the PRC: Antidumping Duty Orders,* 75 Fed.Reg. 57,257, at 57,257 (Sept. 20, 2010) ("*AD Orders*"); *Certain MCBs from the PRC: Countervailing Duty Order,* 75 Fed.Reg. 57,442, at 57,442 (Sept. 21, 2010) (" *CVD Order,* " and collectively, "the Orders"). MCBs are a type of "refractory brick" necessary for certain applications in the steelmaking industry. R.3d 3 Ex. 1 at 6–7. Steelmakers use refractory bricks as lining for the inside of ladles that transport and pour molten steel and as lining for the inside of metallurgy furnaces. *Id.* & Ex. 2 at 5–7. Refractory bricks undergo repeated exposure to extreme temperatures and caustic substances in these roles, meaning each brick has a limited useful life. *Id.* Ex. 2 at 5–6. Bricks used in certain locations—particularly at the "slag line and at the top of the steel melt [,] where active chemical processes

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

are taking place and impurities and waste tend to aggregate"—experience more wear than bricks in other locations. *Id.* at 5. Consequently, producers offer a wide range of refractory bricks with finely tuned chemistries for use in different parts of the ladle or furnace. *Id.* at 5–6. Steelmakers arrange these specialized bricks to achieve uniform deterioration and to lower costs, although the exact arrangement "may be quite different from shop to shop." *Id.* at 5–7.

**\*1351** MCBs are a particularly strong variety of refractory brick composed of magnesia (MgO) and added carbon. *Id.* Ex. 1 at 10–12 & Ex. 2 at 5–7. MCBs exhibit high thermal conductivity, low porosity, and high corrosion resistance. R.2d 18 at 5 (citing R.3d 3 Ex. 1 at 10–11). Consequently, MCBs are used where corrosion is most severe—the slag line, the lower sidewall, the upper sidewall, the roofs of ladles, and the wall lining of high-temperature furnaces. R.3d 3 Ex. 1 at 6–7.

The scope of the Orders covers "certain chemically-bonded ... magnesia carbon bricks with a magnesia component of at least 70 percent magnesia ... by weight, ... with carbon levels ranging from trace amounts to 30 percent by weight, regardless of enhancements ... and regardless of whether or not antioxidants are present." Pl.'s Br. at 6 (quoting *AD Orders,* 75 Fed.Reg. at 57,257; *CVD Order,* 75 Fed.Reg. at 57,443).

On May 3, 2011, Fedmet filed a scope ruling request to determine whether its Bastion MACB product is covered under the Orders. *Certain Magnesia Carbon Bricks from the PRC and Mexico: Preliminary Scope Ruling—Fedmet Resources Corporation,* Case Nos. A–201–837, A–570–954, and C–570–955 at 1 (Mar. 30, 2012) (" *Preliminary Scope Ruling* "). Fedmet's Bastion bricks contain 70–90% magnesia and 3–15% carbon, levels well within the scope's technical parameters. Pl.'s Br. at 6–7. However, Fedmet argues that the 8–15% alumina ($Al_2O_3$) content of its Bastion bricks distinguish them from in-scope MCBs. *Id.* at 3. Specifically, the alumina reacts with magnesia in the brick

at steelmaking temperatures to form a mineral called spinel. *Id.* "The spinel improves the performance of the brick in certain applications by promoting permanent expansion of the brick when it is heated, which hinders the formation of cracks, and maintains that expansion when the ladle cools between uses." *Id.*

All parties agree there is no standard chemical definition for bricks marketed as MACBs. *Final Scope Ruling* at 9; *see* Pl.'s Reply at 6. Evidence on the record demonstrates that the term "MACB" can refer to bricks with more than 70% magnesia ("low-alumina bricks"), as well as bricks with less than 70% magnesia ("high-alumina bricks").[FN2] *Preliminary Scope Ruling* Ex. 2 at 3 (online description of products marketed as MACBs with less than 70% magnesia content); R.2d 18 Ex. 1 at 3 (in reference to MACBs, "carbon-bonded bricks with 50–90% [magnesia] or 40–50% [alumina] are used in the Asian region"); R.4th 2 at 3–10 (discussing industry naming conventions indicating that any brick with a majority magnesia content and added alumina and carbon can be called an MACB). Fedmet stated at oral argument that the minimum level of alumina required to form spinel is about 5%, Hr'g Tr. at 17, *Fedmet Res. Corp. v. United States,* No. 12–00215 (Ct. Int'l Trade Mar. 26, 2013), but there is little evidence in the administrative record to support this claim. *See Preliminary Scope Ruling* Ex. 1 at 100–01 (showing that bricks with 4% added alumina exhibit characteristics similar to bricks with 5–7% added alumina, but noting that bricks with 4% alumina "show[ ] less expansion[,] which may be optimal" for preventing slag penetration).

> FN2. As the amount of magnesia in an MACB increases, the amount of room left for added alumina decreases. Hence, a low-alumina brick with 70% magnesia cannot contain more than 30% alumina, whereas a high-alumina brick with less than 70% magnesia can have up to nearly 50% alumina. Bricks with more alumina

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

than magnesia are called alumina magnesia carbon bricks ("AMCBs"). R.4th 2 at 3.

**\*1352** In its preliminary determination, Commerce ruled that Fedmet's Bastion low-alumina MACB is within the scope of the Orders. *Preliminary Scope Ruling* at 1–2. Commerce first found that "[b]ased on the magnesia and carbon content alone, it appears that Fedmet's Bastion[ ] [MACBs] fall within the scope of the Orders" because they contain more than 70% magnesia and have some added carbon. *Id.* at 26. Nevertheless, Commerce found "it necessary to look beyond the language of the scope of the Orders because of the potential ambiguity regarding whether the plain language of the scope covers MCBs with alumina." *Id.* Commerce then determined that conflicting language in the petition and in the investigations before it and the ITC "prevent[ed] a definitive conclusion on these sources alone." *Id.* at 26–27. Upon consideration of the physical characteristics, purchaser expectations, end use, channels of trade, price, and manner of advertising, however, Commerce concluded that Fedmet's Bastion bricks did fall within the scope of the Orders. *Id.* at 27–32. Commerce later affirmed each of these determinations in its *Final Scope Ruling. Final Scope Ruling* at 1–12.

Fedmet alleges that the *Final Scope Ruling* is unsupported by substantial evidence and contrary to law because the steel industry considers MACBs to be distinct products from MCBs. Specifically, Fedmet argues: (1) language in the petition, questionnaire responses, and investigations indicates the scope should be interpreted to exclude MACBs; (2) MACBs are distinguishable from in-scope MCBs on the basis of their distinct physical properties; and (3) Commerce acted contrary to law by interpreting the scope as covering MACBs even though the ITC excluded them from its injury determination. Pl.'s Br. at 12–38.

### JURISDICTION

The court has jurisdiction over this matter pursuant to section 516(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. §

1516a(a)(2)(B)(vi) (2006).FN3

FN3. All further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the United States Code, 2006 edition, and all applicable supplements thereto.

### STANDARD OF REVIEW

[1] The court must uphold Commerce's scope determination unless it is "unsupported by substantial evidence on the record, or not otherwise in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Huaiyin Foreign Trade Corp. (30) v. United States,* 322 F.3d 1369, 1374 (Fed.Cir.2003) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)), "taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed.Cir.1984).

[2][3] "[T]he plain language of the ... order is paramount" in determining whether particular products are included in the scope. *King Supply Co. v. United States,* 674 F.3d 1343, 1345 (Fed.Cir.2012); *see Walgreen Co. v. United States,* 620 F.3d 1350, 1354 (Fed.Cir.2010). Nevertheless, antidumping and countervailing duty orders "sometimes employ general language," which "can render the ... scope ambiguous." *See Mid Continent Nail Corp. v. United States,* 35 CIT ——, ——, 770 F.Supp.2d 1372, 1378 (2011); 19 C.F.R. § 351.225(a) (2013). A scope ruling "is a highly fact-intensive and case-specific determination," *King Supply Co.,* 674 F.3d at 1345, that is "particularly within the expertise of [Commerce]." **\*1353***Sandvik Steel Co. v. United States,* 164 F.3d 596, 600 (Fed.Cir.1998). Thus, challenging a scope ruling is "a course with a high barrier to reversal." *Nippon Steel Corp. v. United States,* 458 F.3d 1345, 1352 (Fed.Cir.2006) (quoting *Mitsubishi Heavy Indus., Ltd. v. United States,* 275 F.3d 1056, 1060 (Fed.Cir.2001)) (internal quotation marks omitted).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

## ANALYSIS

If a scope contains language "that is subject to interpretation," Commerce will resolve the ambiguity using the interpretive tools contained in 19 C.F.R. § 351.225. *Duferco Steel, Inc. v. United States,* 296 F.3d 1087, 1096–97 (Fed.Cir.2002). Fedmet concedes "the scope language alone is not dispositive of the treatment of [MACBs] under the [O]rders." Pl.'s Reply at 2–3; *see* Def.'s Br. at 13–14.

Under 19 C.F.R. § 351.225(k)(1), Commerce must first consider "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] ... and the [ITC]." *Id.* If those "criteria are not dispositive," Commerce must then consider the factors listed in paragraph (k)(2): "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed." *Id.* § 351.225(k)(2).

### I. Commerce's 19 C.F.R. § 351.225(k)(1) Analysis

[4] Commerce determined that "at no point in either the petition, the ... pre-initiation stage, or the [ITC's determination] did [Resco] identify the chemical composition and technical specifications of each type of refractory brick, or expressly state that [MACBs] with a chemical composition like [Fedmet's Bastion brick] fall outside the scope." *Final Scope Ruling* at 5. In other words, Commerce found each reference to "MACBs" in the (k)(1) evidence to be ambiguous with respect to whether it actually identified low-alumina bricks like the Bastion brick. In light of this ambiguity, Commerce determined that the (k)(1) evidence was inconclusive and further analysis under the (k)(2) factors was necessary to determine to whether Fedmet's Bastion MACBs were within the scope. *Id.; Preliminary Scope Ruling* at 26–27.

Fedmet insists that Commerce's analysis is not

supported by substantial evidence because MACBs are simply understood to be distinct from MCBs. *See* Pl.'s Br. at 13–24. Claiming that "MCBs do not contain added alumina," Fedmet argues that each reference to MACBs in the (k)(1) evidence demonstrates that MACBs like its Bastion brick were never intended to be included in the scope. *Id.* at 24. For example, Fedmet notes that Resco named "magnesite, fired bauxite, magnesia dolomite and [MACBs]" as products that "are not generally substitutable [for in-scope MCBs], in a technical sense, due to varying chemical and physical properties and wear characteristics." R.3d 3 Ex. 1 at 10. Based on this statement, Fedmet concludes that Resco "express[ly]" excluded low-alumina MACBs like Fedmet's Bastion brick from the scope. Pl.'s Br. at 13–14. Fedmet also identifies a questionnaire response where Resco stated that "[t]he scope of our petition focuses only on MCB" and that "[t]hese other products [including MACBs] do not provide the same performance where MCB are used in steelmaking and steel handling applications." R.3d 3 Ex. 2 at 4. Fedmet argues this response "can only be read as confirmation that the scope language defining MCBs was adequate to clearly exclude [MACBs]." Pl.'s Br. at 16.

**\*1354** Fedmet's approach obscures two critical facts supported by the record that instill the term "MACB" with considerable ambiguity. First, advertisements and other record evidence indicate that the term "MACB" can refer to low-alumina bricks as well as high-alumina bricks. *Preliminary Scope Ruling,* at Ex. 2; R.2d 18 Ex. 1 at 3; R.4th 2 at 3–10. Second, record evidence of industry naming conventions reasonably suggests that so long as the magnesia content of a brick with added alumina remains above 70%, it can be called *either* an MCB *or* an MACB. R.2d 19 at Ex. 2 (advertisements describing the "Vesuvius"-trademarked product as an MCB even though it contains levels of added alumina comparable to the Bastion MACB product); *Preliminary Scope Ruling* at Ex. 2 (several online marketing sources describing products as MCBs even though they contain added alumina). Con-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

sequently, without further specification, "MACB" may refer to only high-alumina MACBs in some contexts, to high- and low-alumina MACBs in others, or to MCBs with added alumina in others still. R.2d 19 at Ex. 2; *Preliminary Scope Ruling* at Ex. 2. Commerce recognized this ambiguity throughout its analysis, *id.* at 19, 26–27; *Final Scope Ruling* at 5, and reasonably concluded it could not determine whether low-alumina MACBs like Fedmet's Bastion bricks were outside the scope based on the (k)(1) evidence alone. *See ArcelorMittal Stainless Belg. N.V. v. United States,* 694 F.3d 82, 88 (Fed.Cir.2012) ("[A]ntidumping orders should not be interpreted in a vacuum devoid of any consideration of the way the language of the order is used in the relevant industry.").

Because Resco's use of the term "MACB" does not differentiate between high-alumina and low-alumina MACBs, the petition and questionnaire response language Fedmet identifies is plainly ambiguous. *See Preliminary Scope Ruling* at 26–27. MACBs "generally" are not substitutable for MCBs, but record evidence shows that low-alumina MACBs specifically are often substituted for MCBs due to their similar or even enhanced performance in MCB applications. *Id.* at Exs. 1 & 2; R.2d 19 at 8–13 & Exs. 2, 5. In a later response, Resco went on to describe how products it excluded by name from the proposed scope always fall outside of the scope's plain language, while making no similar claim elsewhere about MACBs. *See* R.3d 3 Ex. 3 at 1. As Commerce reasonably determined, without further chemical specification, these references to MACBs indicate that Resco may have intended to exclude only *some* MACBs, namely, high-alumina MACBs that can never meet the scope's plain language. *See Preliminary Scope Ruling* at 26–27.

Fedmet's remaining arguments are similarly unpersuasive. Fedmet avers that Commerce failed "to meaningfully address the repeated, express statements by Resco that it did not intend to cover [MACBs]." Pl.'s Br. at 18. Fedmet argues further that Commerce "chose[ ] to accept" Resco's explicit

statements excluding MACBs from the scope, and that Commerce cannot now change its position. Pl.'s Br. at 20. Fedmet also insists that Commerce and Resco never offered a "plausible alternative interpretation" of the references to MACBs in the petition and the questionnaire responses. Pl.'s Br. at 22. In fact, Resco *never* expressly stated that MACBs with in-scope quantities of magnesia and carbon should be excluded from the Orders. *See* R.3d 3 Exs. 1–3; *Preliminary Scope Ruling* at 26–27; Pl.'s Br. at 29 (quoting testimony before the ITC where counsel for Resco listed MACBs alongside other excluded bricks, but did not distinguish between high- and low-alumina MACBs). Furthermore, Fedmet's refusal to consider the difference between high- and low-alumina varieties of MACB does not eliminate the inherent linguistic ambiguity **1355** supporting multiple reasonable interpretations of the (k)(1) evidence. *See Preliminary Scope Ruling* at 19, 26–27; *Final Scope Ruling* at 5.

As every piece of (k)(1) evidence is ambiguous as to whether it is referring to MCBs with added alumina or to all bricks with more than 50% magnesia, some carbon, and some alumina, Commerce's determination that the (k)(1) factors were not dispositive was reasonable. *See Preliminary Scope Ruling* at 4–27; *Final Scope Ruling* at 3–5.

## II. Commerce's 19 C.F.R. § 351.225(k)(2) Analysis

[5] Fedmet contends that "even if the [c]ourt were to find that Commerce was lawfully permitted to consider the factors in 19 C.F.R. § 351.225(k)(2) , Commerce's findings under those factors are also unsupported by substantial evidence." Pl.'s Br. at 11. Fedmet argues that Commerce made four general errors in finding that the physical characteristics of its Bastion brick are similar to those of in-scope MCBs.[FN4] Pl.'s Br. at 33–38.

> FN4. Fedmet includes two additional paragraph-long sections titled "Channels of Trade and Price and Manner of Sale and Advertising" and "Expectations of the Ultimate Purchaser and Ultimate Use of the

Product." Pl.'s Br. at 37–38. In those sections, Fedmet argues that Commerce improperly based its finding that "MCBs and [MACBs] are 'interchangable' " on "certain product advertisements it pulled off the internet ... by entities who were not parties to Commerce's scope inquiry," Pl.'s Br. at 37 (quoting *Final Scope Ruling* at 10), and "ignore[d] detailed evidence provided by Fedmet on the different specific uses of [MACBs]." Pl.'s Br. at 38. It is not the court's role to reweigh evidence before Commerce, *see Laminated Woven Sacks Comm. v. United States,* 716 F.Supp.2d 1316, 1328 (2010) (citing *Burlington Truck Lines Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)), and there is substantial additional evidence on the record indicating that low-alumina MACBs like Fedmet's Bastion brick are in fact interchangeable with MCBs. *See Preliminary Determination* Exs. 1 & 2; *ITC Final Determination* at I–9; R.2d 19 at Exs. 3 & 5.

[6] First, Fedmet claims "Commerce's finding is contrary to the ITC's final injury determination," wherein "the [ITC] found that 'other refractory bricks, such as fired magnesite, fired bauxite, magnesia dolomite, and [MACBs] ... do not have the same physical characteristics of MCB, are easily differentiated by price, and their uses are not perceived by the steel producers as substitutable.' " Pl.'s Br. at 33 (quoting *ITC Final Determination,* at I–8). Fedmet again fails to acknowledge the difference between high-alumina and low-alumina MACBs. Therefore, Fedmet has not demonstrated how this reference to MACBs definitively identifies *all* MACBs instead of only those high-alumina MACBs that are not interchangeable with MCBs. *See id.*

Second, Fedmet argues that Commerce "ignore[d] the extensive and detailed evidence" demonstrating that Bastion MACBs are distinct

from in-scope MCBs due to their spinel-producing alumina content "in favor of a single article that Commerce found on the internet" in a publication called *Millennium Steel.* Pl.'s Br. at 33–34. Fedmet challenges "the *bona fides* of this publication" and "the credentials of the authors of this study," while simultaneously insisting that the *Millennium* study supports its own conclusion that MACBs are distinguishable from MCBs. Pl.'s Br. at 34–35.

Fedmet has not demonstrated that Commerce's reliance on the *Millennium* study was unreasonable. The court's role is not to reweigh evidence, *see Laminated Woven Sacks,* 716 F.Supp.2d at 1328 (citing *Burlington Truck Lines,* 371 U.S. at 168, 83 S.Ct. 239), and it will not accept Fedmet's**1356 invitation to do so here, especially in the complete absence of evidence questioning the study's credibility. In any event, Commerce used the *Millennium* study to "confirm[ ] that MCBs with added alumina are widely used" in the same applications and have similar physical properties as in-scope MCBs. *Preliminary Scope Ruling* at 28 & Ex. 1 (internal quotation marks omitted). The study concludes that some MACBs may offer better performance than non-alumina MCBs in areas where MCBs are generally used. *Id.* Ex. 1 at 101–02. Nevertheless, according to the *Millennium* study, "[e]xcessive expansion" caused by spinel formation in high-alumina MACBs "may lead to development of stresses which causes structural spalling." *See id.* at 100–02. Consequently, the *Millennium* study is consistent with other record evidence demonstrating a physical distinction between high-alumina and low-alumina MACBs—that spinel formation in low-alumina MACBs provides the same physical properties that set in-scope MCBs apart from other refractory bricks, whereas spinel formation in high-alumina MACBs causes those bricks to behave like other out-of-scope refractory products. *See Preliminary Scope Ruling* at 28–29.

Third, Fedmet contends that Commerce improperly "dismissed the information" contained in the *Pocket Manual* on the basis that it contains am-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

911 F.Supp.2d 1348, 35 ITRD 1517
(Cite as: 911 F.Supp.2d 1348)

biguous language as to the chemical content of MACBs. Pl.'s Br. at 36. Appearing directly below a table titled "Classification of the [AMCBs] according to ISO/DIS 10081–4," the *Pocket Manual* notes: "Regarding the magnesia side of the variation range of MgO and $Al_2O_3$ at the moment carbon-bonded bricks with 50–90% MgO or 40–50% $Al_2O_3$ are used in the Asian region. These bricks are designated as [MACBs]." R.2d 18 Ex. 1 at 108. The remainder of the article makes conclusions regarding the difference between AMCBs and MCBs, without further specifying the nature of MACBs. *Id.* at 108–11. Commerce argues that it "reasonably found the reference to MACBs in the *Pocket Manual* ambiguous as to the chemical composition of [MACBs] because it is unclear whether the focus of the paragraph is MACBs or [AMCBs], which contain a higher alumina content than [MACBs]," and is unclear as to whether that "standard" applies outside of Asia. Def.'s Resp. at 33.

Extending to Commerce the appropriate deference in analyzing the record before it, *King Supply Co.,* 674 F.3d at 1348, Commerce's treatment of this passage as ambiguous was reasonable. In context, the *Pocket Manual* can reasonably be considered ambiguous as to which bricks "are designated as [MACBs]," and by whom. *See* R.2d 18 Ex. 1 at 107–11. For example, the quote does not illuminate whether a brick with 91% magnesia, 8% alumina, and 1% carbon can be considered an MACB, or whether it would be called something else outside of Asia. *See id.* at 108. Furthermore, even if Commerce determined MACBs can contain "up to 50%" alumina as Fedmet insists it should have, the *Pocket Manual* would not undermine the *Final Determination.* The *Pocket Manual* simply does not identify any physical characteristics or uses that distinguish low-alumina MACBs like Fedmet's Bastion bricks from MCBs. *See id.* at 107–11. Moreover, several pieces of record evidence otherwise support Commerce's finding that there is substantial physical and functional overlap between low-alumina MACBs like Fedmet's Bastion brick and in-scope MCBs. *See Preliminary Determina-*tion Exs. 1 & 2; *ITC Final Determination* at I–9; R.2d 19 at Exs. 3 & 5.

Lastly, Fedmet argues that Commerce improperly relied on statements in the ITCs determination indicating that carbon—not alumina—is the most important additive in preventing slag penetration in **1357** bricks with greater than 70% magnesia. Pl.'s Br. at 46–47. Fedmet insists that "the significance of spinel formation is that it promotes permanent expansion of the bricks, which, in turn, reduces slag penetration of the joints between the bricks." Pl.'s Br. at 37. However, Fedmet does not cite any record evidence that contravenes the ITC's conclusion that "[t]he carbon in MCBs" *also* "prevents liquid slag from penetrating and eroding bricks." *ITC Final Determination* at I–9; *see* Pl.'s Br. at 46–47. Further, as the *Millennium* study noted, too much alumina can cause cracks that lead to excessive slag penetration, meaning that the relevance of Fedmet's claims are limited by their lack of chemical specificity. *Preliminary Scope Ruling* Ex. 1 at 100. Put simply, the record shows that the low alumina content in an MACB like Fedmet's Bastion brick promotes the same physical characteristics that set in-scope MCBs apart from other refractory products—slag resistance and low porosity. *Id.; ITC Final Determination* at I–9; R.2d 19 Ex. 3 at 176.

For the foregoing reasons, and on balance with Commerce's analysis of the remaining (k)(2) factors including the manner of advertisement and ultimate use of low-alumina MACBs, Commerce's interpretation of the scope using the (k)(2) factors was reasonable. *See Preliminary Scope Ruling* at 27–29; *Final Scope Ruling* at 8–10.

### III. ITC Injury Determination

According to Fedmet, "[t]he antidumping statute provides that in order to impose antidumping duties on imported merchandise, there must be affirmative determinations by both Commerce and the ITC." Pl.'s Br. at 30 (citing 19 U.S.C. § 1673). Consequently, "the failure of the ITC to have investigated or reached an affirmative determination

911 F.Supp.2d 1348, 35 ITRD 1517
**(Cite as: 911 F.Supp.2d 1348)**

with respect to [MACBs] is itself sufficient grounds for holding that the scope of the Orders does not cover [MACBs]." *Id.* Although there is no controlling authority explicitly supporting Fedmet's legal position, *see Eckstrom Indus., Inc. v. United States,* 254 F.3d 1068, 1075 n. 3 (Fed.Cir.2001) (declining to reach the question of whether the exclusion of a product from the ITC investigation, by itself, could establish that the product is not covered under the scope); *Wheatland Tube Co. v. United States,* 161 F.3d 1365, 1371 (Fed.Cir.1998) (stating in dicta that scope inconsistencies between the ITC's investigation and Commerce's investigation would "frustrate the purpose of antidumping laws"), no party offers an alternative interpretation of the Act. *See* Commerce Resp. at 23–26; ANH Resp. at 26; M & R Resp. at 8–9. Commerce and defendant-intervenors argue instead that the ITC did include an MACB in its injury determination. Commerce Resp. at 23–26; ANH Resp. at 26; M & R Resp. at 8–9.

Even assuming that Fedmet's interpretation of the law is correct, *see Wheatland Tube,* 161 F.3d at 1371, Commerce's determination was not contrary to law. Because there is substantial evidence on the record demonstrating that low-alumina MACBs are interchangeable with in-scope MCBs, the question of whether or not the ITC considered an MACB is irrelevant. *See Preliminary Determination Exs.* 1 & 2; *ITC Final Determination* at I–9; R.2d 19 at Exs. 3 & 5. Even so, the record indicates that the ITC did include a low-alumina MACB in its injury determination. *See Final Scope Ruling* at 5. Specifically, as Commerce explained in the *Final Scope Ruling,* "the ITC included [Resco's] Maxline 10 AFX trademarked product, an MCB with added alumina, in its pricing analysis." *Id.* at 5; *see* Pl.'s Br. at 24 ("MCBs do not contain added alumina.").

In its Reply brief, Fedmet argues that the Maxline 10 AFX brick is not an MACB because the ITC record does not describe **\*1358** it as containing alumina and because Resco has not provided any evidence that the Maxline brick promotes the form-

ation of spinel. Pl.'s Reply at 16–18. However, Fedmet fails to address record evidence indicating that any MCB with added alumina can be called an MACB. *See* R.4th 2 at 3–10 (discussing naming conventions); *Preliminary Scope Ruling* at Ex. 2; R.2d 19 at Ex. 2. In the absence of a standard technical definition for MACBs based on spinel formation that readily distinguishes Resco's Maxline brick from other low-alumina MACBs, Commerce's determination was justified and in accordance with the law. *See* R.4th 2 at 3–10; *Preliminary Scope Ruling* at Ex. 2; R.2d 19 at Ex. 2.

### CONCLUSION

The record demonstrates a physical distinction between low-alumina MACBs and high-alumina MACBs, imparting an ambiguity into the phrase "MACB" in each (k)(1) source. Commerce therefore acted reasonably in moving on to the (k)(2) factors to determine whether Fedmet's Bastion brick is covered under the scope of the Orders. Although Fedmet is able to identify evidence showing that low-alumina MACBs exhibit certain characteristics as a result of spinel formation, it does not and cannot refute evidence demonstrating that these characteristics are the same as those that set in-scope MCBs apart from other refractory products, namely, slag resistance and low porosity. As there is substantial evidence in the record showing that low-alumina MACBs like Fedmet's Bastion brick meet the scope's plain language and are interchangeable with in-scope MCBs, Fedmet's motion for judgment on the agency record must be denied. Judgment will be entered accordingly.

CIT,2013.
Fedmet Resources Corp. v. U.S.
911 F.Supp.2d 1348, 35 ITRD 1517

END OF DOCUMENT

**PROOF OF SERVICE**
**U.S. Court of Appeals for the Federal Circuit**
*Fedmet Resources Corporation v. United States*
**2013-1539**

Pursuant to Federal Circuit Rule 25 and the Administrative Order Regarding Electronic Case Filing 2(D), I hereby certify that on the 30th day of September 2013, I have caused service of the foregoing document by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Docketing Activity to all parties with an email address of record:

**Antonia Ramos Soares, Esq.**
Department of Justice
Commercial Litigation Branch, Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Email: antonia.soares@usdoj.gov

**Devin S. Sikes, Attorney**
Department of Commerce
Office of the Chief Counsel for Import Administration
Room 3627
1401 Constitution Avenue, N.W.
Washington, DC 20230
Email: devin.sikes@trade.gov

**Joseph W. Dorn**
King & Spalding LLP
Firm: 202-626-9252
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
Email: jdorn@kslaw.com

**Camelia Mazard, Esq.**
Doyle, Barlow & Mazard PLLC
Suite 715
1110 Vermont Avenue
Washington, DC 20005
Email: cmazard@dbmlawgroup.com

/s/Julie C. Mendoza

**Form 19**

FORM 19.   Certificate of Compliance With Rule 32(a)

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [        *12,398*        ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using [        *Microsoft Word 2007*        ] in [        *Font Size 14, Times New Roman*        ], or

☐    The brief has been prepared in a monospaced typeface using [    *state name and version of word processing program*    ] with [ [    *state number of characters per inch and name of type style*    ].

/s/ Julie C. Mendoza
_____
(Signature of Attorney)

Julie C. Mendoza
_____
(Name of Attorney)

Appellant
_____
(State whether representing appellant, appellee, etc.)

9/30/2013
_____
(Date)

Reset Fields